DAVID B. WILLIAMS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6443–66, 4036–67. Filed October 21, 1969.

*Truman Clare*, for the petitioner.
*Larry K. Hercules*, for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in the income tax of petitioner for calendar years as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 6443–66 | 1962 | $1, 186. 52 |
| | 1964 | 864. 56 |
| 4036–67 | 1965 | 1, 532. 05 |

The sole issue for decision is whether, during the years involved, petitioner qualified for head-of-household rates of tax under section 1(b), I.R.C. 1954.

FINDINGS OF FACT

Petitioner is an unmarried individual whose residence was in Lakeside, Mont., at the time the petitions herein were filed. He filed timely income tax returns for the calendar years 1962, 1964, and 1965 with the district director of internal revenue at Omaha, Nebr.

In about 1945 petitioner and his wife adopted three children, the youngest of which, named Jerry, was born July 8, 1936. Petitioner's wife died in August 1948. Petitioner has not remarried.

Petitioner was employed upon construction projects. He was employed by Peter Kiewit Sons, Inc., a corporation which undertook con-

struction contracts in various States and in Canada. In 1948 he worked on a project in Albuquerque, N. Mex. Later he bought a home in Denver, Colo., where he lived with his children for a year. In about 1954 or 1955 he was employed on a Garrison Dam contract in North Dakota. He acquired a house at Riverdale, N. Dak., near the job, and lived there with the children until 1957. In 1957 he went to New York to work on the St. Lawrence River Seaway project. After that job he made Omaha, Nebr., his headquarters but worked on various construction jobs in other parts of the United States. In 1962 he did some work in Canada. In 1963 he went to Canada to supervise a construction job and stayed for 2 years. In 1965 he returned to the United States, and retired from work except for part-time service as a consultant.

In 1959 or 1960 petitioner sold his Riverdale property. In 1961 he bought a residence property at Lakeside, Mont. It included a six-room house equipped for all-year living. He did not occupy this property until May or June of 1965. In 1963 he built another house on the same land close to the first house. He allowed relatives to occupy the property, rent-free, while he was in Canada.

From the time he left Riverdale in 1957 until he occupied his Lakeside residence in 1965 petitioner lived in hotel rooms and alone. None of his children resided with him during this period.

Petitioner's son, Jerry, was a person of unstable mental condition. When petitioner worked on the St. Lawrence River Seaway project, Jerry was employed on the same job. He lived with another person. When petitioner left that project and moved to Omaha, Jerry continued on the job for some 5 months longer. Jerry then came to Omaha and for 1 week lived in a room in a different hotel. Jerry then went to Glasgow, Mont., to work on another job. There he got in trouble and was in jail for 60 days or more. He was in jail in other places occasionally thereafter. In 1959 Jerry attacked petitioner and tried to kill him. Petitioner persuaded Jerry to accept treatment at a hospital. Jerry received treatment for a mental condition in a hospital in Omaha in July and August 1959 and for a time in September 1959 and in November 1959. He was in a State mental hospital in 1960 and 1961. Medical records report that he was schizophrenic and paranoid. After leaving the State hospital in 1961 he married one of the former inmates. In 1963 and 1964 they had two children.

Petitioner always supported his son Jerry and, after Jerry's marriage, supported Jerry's family also. In the taxable years, Jerry and his family lived in apartments at various places, in Omaha, or in Lincoln or Grand Island or Mitchell, Nebr. At times Jerry was detained by local or Federal authorities. Because Jerry was irresponsible in handling money, and petitioner was often at distant

points in his work, petitioner arranged with an accountant to supply Jerry and his family with necessary cash and to pay rent, utility bills, and medical bills directly.

When petitioner went to Canada he could not have Jerry accompany him because of Jerry's criminal and psychiatric record. Petitioner could not have resided in the same household with Jerry because petitioner was afraid for his life.

Petitioner has claimed dependency exemptions on his income tax returns for his son Jerry, and Jerry's wife and children. Respondent concedes that these persons were petitioner's dependents.

### OPINION

Petitioner contends that he is entitled to compute his taxes at the rates provided for head of a household under section 1(b). These rates apply where an individual supports a dependent in the circumstances specified. The term "head of household" is defined in section 1(b)(2).[1]

Except where the dependent is a parent, a taxpayer is qualified only if he "maintains as his home a household which constitutes * * * the principal place of abode, as a member of such household, of" the dependent of the taxpayer.

Petitioner says that the legislative history of section 1(b) recognizes that there would be situations in which the family could not all live under the same roof and argues that this is such a situation.

The regulations define the term "household." Income Tax Regs., sec. 1.1–2(c). With reference to dependents other than parents, the regulations state:

It is not sufficient that the taxpayer maintain the household without being its occupant. * * * The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness, education, business, vacation, military service, or a custody agreement under which a child or stepchild is absent for less than six months in the taxable year of the taxpayer, shall be con-

---

[1] SEC. 1(b). RATES OF TAX ON HEADS OF HOUSEHOLDS.

(2) DEFINITION OF HEAD OF HOUSEHOLD.—For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in section 2(b)), and either—

 (A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of—

  (i) a son, * * * but if such son, * * * is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

 *  *  *  *  *  *  *

 (B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151.

sidered temporary absence due to special circumstances. Such absence will not prevent the taxpayer from qualifying as the head of a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return.

Petitioner makes two principal contentions as to the "household" involved. One is that the household occupied by Jerry and Jerry's family, which petitioner "maintained" and which was the principal place of abode of his dependents, as members of that household, qualifies, since his own absence from that household was a temporary absence due to special circumstances, the mental illness of his son which made it dangerous for petitioner to live with Jerry. The second contention is that the residence property owned by petitioner at Lakeside, Mont., was a household maintained by petitioner for the use by Jerry and his family and petitioner as a place of abode by all when Jerry recovered from his mental difficulties and was no longer dangerous to petitioner, and that petitioner's dependents were temporarily absent from that common abode because of these special circumstances. See, *W. E. Grace*, 51 T.C. 685 (1969), on appeal (C.A. 2, May 2, 1969), which reviews the legislative history underlying section 1(b).

In *Walter J. Hein*, 28 T.C. 826 (1957), the taxpayer supported a sister who had lived in his house until 1946 and was thereafter in a mental hospital. There was slight chance of her recovery. The Court held that in 1952 the taxpayer was qualified as head of a household, his household being her principal place of abode.

The *Hein* case is distinguishable. The dependent had been a member of the taxpayer's household and her absence was regarded as temporary and due to special circumstances. The household was available for her return if she recovered. She had established no new permanent principal place of abode. Here, petitioner's son has not lived with him since 1957. Petitioner maintained no household as his home until 1965. His son has never resided with him in that household. The household occupied by Jerry was not maintained as petitioner's home. Petitioner in the taxable years was afraid to live with his son. Also, petitioner was too far away on his employment to make his home with Jerry and Jerry's family.

Petitioner cites *Laraia* v. *United States*, 232 F. Supp. 602 (D. Mass. 1964). In that case the taxpayer was separated from his wife under a decree but supported her and their children in the former family house where he occasionally stayed and where he kept personal belongings. He later secured custody of the children and, after his wife left the house, he returned with the children to the family house. The court concluded that the taxpayer had treated the house as his most

permanent residence and that he qualified as head of a household. The taxpayer there had at no time abandoned the house. In the present case the petitioner had never lived with his son's family and could not be regarded as "temporarily absent" from the household he maintained for them.

Petitioner also cites *Reardon* v. *United States*, 157 F. Supp. 745 (D. S. Dak. 1958). In this case the dependent had spent vacations in a room in the taxpayer's house, but was absent by reason of illness in the taxable year. In the present case Jerry and his family have never lived with the petitioner.

Petitioner cites *Smith* v. *Commissioner*, 332 F. 2d 671 (C.A. 9, 1964), reversing 40 T.C. 591 (1963). The taxpayer owned two residences, one in California and one in Nevada, spent some time traveling, resided in the Nevada house part of the time and in the California house a lesser part of the time. Her son resided in the California house. The Court of Appeals considered that the taxpayer had two homes and qualified as head of a household. For a part of the year the taxpayer and her dependent had the same place of abode. In the present case there was no such sharing for any part of the taxable years. The cited case is distinguishable.

It is significant that the statute provides a different rule where the dependent is the parent of the taxpayer. Sec. 1(b)(2)(B). In that situation it is not required that the taxpayer reside in the place of abode he provides for his parents. The Congress has deliberately distinguished that situation. The rule in such cases is not available to petitioner here.

Petitioner's case is based upon what he was willing to do had conditions been different. Had Jerry been stable enough to live with, petitioner was willing to provide a place for the family to live together with petitioner. Under the facts as they are, petitioner is afraid to live in the same house with Jerry. Petitioner has never asked Jerry, since his marriage, to live with him. There is no competent evidence that Jerry was willing to live with petitioner. When petitioner worked in Canada in 1963, 1964, and part of 1965, he could not have resided with his son. The petitioner's tax status depends upon the facts as they are, not what they might have been. Petitioner's fear of residing with his son is not the type of "special circumstances" contemplated by the statute or regulations as sufficient reason for temporary absence from the "common abode."

Petitioner was not the head of a household in the taxable years within the meaning of section 1(b).

*Decisions will be entered for the respondent.*