JAMES J. PRENDERGAST, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5467–70. Filed January 6, 1972.

Raymond D. Torbenson, for the petitioner.
Vivian T. Martinez, Jr., for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency of $2,718.15 in petitioner's Federal income tax for the year 1967.

Petitioner has conceded two adjustments. The only issue to be decided is whether petitioner was a head of a household within the meaning of section 1(b)(2) of the Internal Revenue Code of 1954.[1]

#### FINDINGS OF FACT

Many of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

James J. Prendergast (herein called petitioner) is an individual taxpayer. He filed his Federal income tax return for calendar year

---

[1] All statutory references are to the Internal Revenue Code of 1954, prior to amendment by the Tax Reform Act of 1969. The definition of a head of a household presently appears in sec. 2(b).

1967 with the Internal Revenue Service Center at Ogden, Utah. Then and at the time he filed the petition in this proceeding, petitioner was a resident of Bothell, Wash. At all relevant times, he was unmarried and was not a surviving spouse as defined in section 2(b) (now section 2(a)).

During the year 1967 the petitioner maintained and actually occupied a house in Bothell. In the lower part of the house, a one-bedroom apartment, with a private bathroom and a private entrance, was set aside for the use of petitioner's son.

Petitioner's son, whose nickname is Murphy, was approximately 26 years old in 1967. He returned from military duty in 1964 and lived with his father from February through the latter part of September 1964. From September 1964 until March 1967, Murphy attended college in Bellingham, Wash., approximately 80 miles from Bothell. During that 2½-year period, Murphy lived in a rented house with some other young men while in Bellingham and with his father in Bothell during summer vacations and occasionally on weekends. After graduating from college on or about March 17, 1967, Murphy resided with his father and was employed as a salesman, earning $30,091.90 in 1967. Then, in the beginning of September, petitioner's son moved to Seattle, where he shared a rented house with two other bachelors. He took with him a substantial portion of his personal belongings, including clothes, books, furnishings, and athletic equipment, leaving behind out-of-season clothing and sportswear and discarded books. Murphy listed his new Seattle address with the post office (and later withdrew this) and with his bank. He paid rental money directly to his landlord and shared all other expenses with his bachelor friends. He did not notify his draft board, the voter registrar, charge account creditors, National Geographic magazine, an insurance company, or his employer—a lumber company of which his father was president. The reason Murphy moved to the apartment in Seattle was to get away from Bothell for awhile, to try living on his own, and to enjoy a less restrained, more active social life.

After leaving in September 1967, petitioner's son did not return to spend the night until near the end of May 1968, when he returned to the house in Bothell for 3 months. In September 1968, he moved away again, this time to live with a friend until he (Murphy) got married in June 1969.

For the first 8 months of 1967, including the first 2½ months which the son spent at college, petitioner's household was his son's principal place of abode, but not thereafter.

## OPINION

Petitioner used the head-of-household rates in computing his Federal income tax for the calendar year 1967. Determining that this was incorrect, respondent recomputed petitioner's 1967 tax using the individual-taxpayer rates. Since the parties have stipulated that petitioner meets the other requirements of section 1(b)(2) (now section 2(b), the only question presented is whether petitioner's home constituted his son's principal place of abode in 1967, as required by section 1(b)(2)(A) (now section 2(b)(1)(A)).[2] We think that the outcome ultimately depends upon how one construes the fact that in September 1967 the petitioner's son moved out of his father's house in Bothell and into a bachelors' apartment in Seattle. First, however, we must consider petitioner's attack upon the validity of the regulation promulgated under section 1(b)(2).

Section 1.1–2(c)(1) (now section 1.2–2(c)(1)), Income Tax Regs., provides as follows:

In order for the taxpayer to be considered a head of a household by reason of any individual described in subparagraph (A) of section 1(b)(2), the household must actually constitute the home of the taxpayer for his taxable year. * * * It is not sufficient that the taxpayer maintain the household without being its occupant. The taxpayer and such other person must occupy the household for the entire taxable year of the taxpayer. * * * The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness, education, business, vacation, military service, or a custody agreement under which a child or stepchild is absent for less than six months in the taxable year of the taxpayer, shall be considered temporary absence due to special circumstances. Such absence will not prevent the taxpayer from qualifying as the head of a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return.

Petitioner argues that this regulation is, in effect, an unlawful attempt to legislate since its language goes beyond the statutory language. In

---

[2] SEC. 1(b)(2). DEFINITION OF HEAD OF HOUSEHOLD.—For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse * * * and either—

(A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of—

(i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

*    *    *    *    *    *    *

For purposes of this paragraph and of section 2(b)(1)(B), an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual.

support of his argument the petitioner points out that the Code provision does not refer to six examples, does not require occupancy by the dependent for 365 days during the taxable year, and does not require *actual* occupancy by the dependent.

Petitioner's view of the role of Treasury regulations is too narrow. Regulations are supposed to clarify the law for purposes of its administration as well as to establish procedural guidelines. It is, therefore, common for regulations to contain examples and phraseology different from that found in the statute. It is also proper for regulations to construe ambiguous terms, and for these constructions to be given great weight by the courts. *Koshland* v. *Helvering*, 298 U.S. 441, 446 (1936). In general, regulations which are both reasonable and consistent with the statutory provisions will be followed by the courts. *Fawcus Machine Co.* v. *United States*, 282 U.S. 375 (1931); *United States* v. *Morehead*, 243 U.S. 607, 613–614 (1917) (a nontax case). They will not be overruled except for "weighty reasons." *Commissioner* v. *South Texas Co.*, 333 U.S. 496 (1948); *W. E. Grace*, 51 T.C. 685 (1969), affd. 421 F. 2d 165 (C.A. 5, 1969).

This particular regulation is strongly supported by the legislative history of the predecessor of section 1(b), section 12(c) of the Internal Revenue Code of 1939, as amended by section 301(a) of the Revenue Act of 1951. With regard to the general requirement that the dependent occupy the household for the entire taxable year, the report of the House Committee on Ways and Means states that "Section 12(c) is intended to apply only where the taxpayer and such other members of the household live together in such household during the *entire* taxable year (except for temporary absences due to special circumstances)." (Emphasis added.) H. Rept. No. 586, 82d Cong., 1st Sess., p. 106 (1951), 1951–2 C.B. 434. And with regard to the requirement that the dependent actually occupy the houshold, the conference report on H.R. 8300, which was enacted as the Internal Revenue Code of 1954, makes clear that under the Senate's version, the version which was retained, "dependents qualifying the taxpayer must *actually* live in his household." (Emphasis added.) H. Rept. No. 2543, 83d Cong., 2d Sess., pp. 21–22 (1954). Furthermore, the regulations promulgated under section 1(b) have been approved on several prior occasions by this Court. *Alex A. Ruff*, 52 T.C. 576 (1969) (dictum); *W. E. Grace*, *supra* at 687–691.[3]

Returning to the key question in this case, the facts can be summarized as follows: Petitioner's 26-year-old, unmarried son was away at college for the first 2½ months of 1967; he returned to his father's house for the next 5½ months; and in early September he

---

[3] See also *David B. Williams*, 53 T.C. 58 (1969), affd. 441 F. 2d 1168 (C.A. 9, 1971) (where the taxpayer, not the dependent, was absent); *Charles W. Bate*, T.C. Memo. 1967–165; *Estate of Louise K. Adams*, T.C. Memo. 1967–221.

moved into a rented house which he shared with two bachelor friends. When the son moved out of his father's house he took some belongings and left others. He also changed his address with reference to some organizations and activities and failed to change it with reference to others. When asked at trial why he moved, petitioner's son answered: "Well, I wanted to try it on my own and I was making a little bit of money. I just wanted to go out and live with the guys and see what it was like." Also at trial, in response to a question asked by his attorney, the son stated that at the time he left home he intended to return. He did, in fact, return the next May, 8 or 9 months later.

Respondent argues that the son's absence in order to try living on his own was not the type of temporary absence due to special circumstances which the statute, read in the light of its legislative history, was intended to allow.

Petitioner argues that despite the wording of the regulation the son's absence was merely temporary and that, in fact, the son never abandoned his father's house as his principal place of abode. To bolster this position, petitioner treats the terms domicile and principal place of abode as being synonymous and proceeds to try to convince the Court that the son's domicile was his father's home. He asserts that domicile is mainly a question of the party's intent, that the party's intent can be shown by his testimony, and that, once established, a person's place of domicile persists until superseded by a new place of domicile.

To begin with, we agree with respondent that this was not the type of temporary absence which Congress intended to allow. Section 1(b) was originally designed to extend some of the benefits of income splitting to unmarried taxpayers who find it necessary to maintain a household for the benefit of a dependent with whom they share their income. H. Rept. No. 586, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 364; *Walter J. Hein*, 28 T.C. 826, 832 (1957). As a general rule, for the taxpayer's household to be the dependent's principal place of abode, the dependent must physically occupy the household during the entire taxable year in question. H. Rept. No. 586, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 362, 434; *Alex A. Ruff, supra*.[4] According to the legislative history of the section's predecessor, this requirement is met notwithstanding "temporary absences due to special circumstances." H. Rept. No. 586, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 434. See *W. E. Grace, supra*. The regulation promulgated pursuant to the section reflects this modification (or interpretation), but, like the

---

[4] See also *Hugh Browne,* T.C. Memo. 1965-165, affirmed without discussion of this issue 367 F. 2d 386 (C.A. 4, 1966). With regard to the occupancy of the *taxpayer,* compare *Muse* v. *United States,* 434 F. 2d 349 (C.A. 4, 1970), with *Smith* v. *Commissioner,* 332 F. 2d 671 (C.A. 9, 1964). The *Smith* case is discussed in the text below.

statute, fails to explain the meaning of "special circumstances." Instead, the regulation simply lists several circumstances, mainly drawn from the legislative history, which will be considered as qualifications for temporary absences from the household (such as illness, education, business, vacation, and military service) and adds that it must be reasonable to assume that the dependent will return. Although the list is merely a guide for deciding cases on a case-by-case basis, we think it is in accordance with legislative intent. See *Walter J. Hein, supra; Alex A. Ruff, supra*. With further regard to the meaning of "special circumstances," we think that the following portions of the report of the House committee are enlightening:

Section 12(c) is intended to apply only where the taxpayer and such other members of the household live together in such household during the entire taxable year (except for temporary absences due to special circumstances). The fact that a child may be at college during the college term does not prevent the home of the taxpayer from also constituting the principal place of abode of the child. However, *such home will not be considered as the principal place of abode where the child establishes a separate habitation and only returns for periodic visits*. Similarly, such home will not be considered as constituting the principal place of abode of a dependent of the taxpayer who is supported by the taxpayer for a substantial part of the year in lodgings other than those occupied by the taxpayer even though such person may at various periods live in the household, *unless the residence of the dependent in other lodgings is not permanent and is due to necessity such as illness.* [Emphasis added. H. Rept. No. 586, 82d Cong., 1st Sess. (1951), 1951–2 C.B. 434.]

From all of these sources—the statute, its legislative history, prior cases such as the *Hein* case, and the regulations—we gather that by "special circumstances" Congress intended to distinguish as best it could temporary absences due generally to necessitous reasons from absences of a more permanent nature which are due to nonnecessitous reasons. Obviously, the distinction is less than precise. But the courts are able to decide on which side a particular case falls.

In the instant case we have no trouble finding that the son's move to Seattle constituted the establishment of a separate habitation as opposed to a temporary absence due to special circumstances. The petitioner's son, who was an adult earning a higher than average income, chose to move away from his father's house to a bachelors' apartment in order, in his own words, "to try it on my own." [5] We conclude

---

[5] See and compare *Estate of Louise K. Adams,* T.C. Memo. 1967–221. The taxpayer's daughter left home to pursue full-time employment as an assistant dean at a distant university. This Court held that "it would be an unjustified extension of the Code provision to extend the head-of-household tax advantages to a taxpayer whose qualifying dependent has not only become economically independent but has also accepted full-time employment away from home for a full year at a time."

While economic independence may not be material where the son actually occupies his father's household (see H. Rept. No. 586, 82d Cong., 1st Sess. (1951), 1951–2 C.B. 302, 433), it is a factor to be weighed along with others in determining whether a son's absence qualifies as a "temporary absence due to special circumstances."

that the son's absence was unjustified within the intendment of the statute.

In addition, we disagree with petitioner's contention that "principal place of abode" as used in section 1(b) is synonymous with "domicile." If Congress had intended "principal place of abode" to mean "domicile," it would have used the word "domicile." And if Congress considered the two terms to be synonymous, it probably would not have used both terms in the same Code section, as it did in section 6091. Admittedly, evidence of domicile, namely, evidence of an intention when absent to return to a dwelling place, has been relied upon in the past as an important element in determining principal place of abode. *Walter J. Hein, supra.* See also *Cockrell* v. *United States*, an unreported case (N.D. Tex. 1957, 1 A.F.T.R. 2d 394, 58–1 U.S.T.C. par. 9159); *Reardon* v. *United States*, 158 F. Supp. 745 (S.D. 1958). But, to our knowledge, these two terms of art have never been treated as synonymous by this or any other court deciding Federal tax cases.[6]

The son's statement at trial that he intended to return to the petitioner's house is not determinative of the result herein. While it is true that the statement is highly probative of *domicile*, since a person's intent to make a place his home is a requisite of domicile, the same evidence is, we think, less probative of *principal place of abode*. It may be (although we need not decide) that petitioner has succeeded in proving that his son's domicile remained at Bothell. (Petitioner's task would be helped by the presumption that a domicile, once established, continues until superseded by a new domicile.) We only hold that petitioner has failed to prove by a preponderance of the evidence that his "principal place of abode" did not change from Bothell to Seattle. Rule 32, Tax Court Rules of Practice. The strongest evidence he offered is the son's declaration at trial. Because of its taxpayer-serving nature and the fact that it was made to achieve a legal result, we have discounted it heavily. Weighing on the other side are the facts that, once having moved, the son resided solely in the house in Seattle (he did not spend any nights in his father's house); that he had with him all of his necessary belongings (he evidently stored some out-of-season or discarded belongings at his father's house); that there was nothing compelling the son to reside in the house in Seattle (he was not, for example, being treated for an illness or attending a university); and that one of the reasons he chose to move to Seattle was to establish a social life away from Bothell.

Finally, petitioner contends that we are bound by the Ninth Circuit's decision in *Smith* v. *Commissioner*, 332 F. 2d 671 (C.A. 9, 1964),

---

[6] For a case in the head-of-household area which treats the two terms differently, see *Smith* v. *Commissioner*, 332 F. 2d 671 (C.A. 9, 1964).

reversing 40 T.C. 591 (1963). In that case the Court of Appeals held that a taxpayer who maintained two homes qualified as a head-of-household where one home was her principal place of abode and the other was her son's principal place of abode. The Court stated, in part, as follows:

A person can have but one domicile, but we see no reason why a person cannot have two homes. The statute requires that the *dependent* must be a member of a household which constitutes for such taxable year the principal place of abode of such dependent child or parent. But the language of the statute does *not* require that the taxpayer maintain the household as *his* principal place of abode. * * *

When the regulations adopted by the Treasury state: "The taxpayer and such other person must occupy the household for the entire taxable year of the taxpayer," they go beyond the statute, if, by the verb "occupy," they require a physical personal occupancy. If they require but a token or implied occupancy, then under the facts of this case that token or implied occupancy has existed. [332 F. 2d at 673.]

The *Smith* case dealt with problems not present in this case, i.e., whether a taxpayer can have two "homes" within the meaning of section 1(b), and whether he can be physically absent from the "home" which is the dependent's "principal place of abode." In the present case the petitioner maintained a single-home household. He does not claim that the house in Seattle was a second home. By contrast the question here is whether the dependent's, not the taxpayer's, absence destroys the head-of-household status. In addition, since the *Smith* case dealt with the absence of the taxpayer-householder, the second paragraph of the opinion, quoted above, is dictum insofar as it relates to the absence of the dependent.

Accordingly,

*Decision will be entered for the respondent.*