DORIS I. LEEDS, a/k/a DONNA DOUGLAS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leeds v. Commissioner
Docket No. 3431-72.
United States Tax Court
T.C. Memo 1974-110; 1974 Tax Ct. Memo LEXIS 209; 33 T.C.M. (CCH) 551; T.C.M. (RIA) 74110; May 2, 1974, Filed. *209 Held: The petitioner did not maintain as her home the household that constituted the principal place of abode of her son during the years in issue, and she therefore does not qualify as a "head of a household." Earl C. Crouter, for the petitioner. Alan E. Herson, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent has determined deficiencies in petitioner's income tax for the year 1968 and 1969 in the amounts of $831 and $5,563, respectively. The only issue for decision is whether petitioner qualifies as a "head of a household" pursuant to section 1(b) (2). [1]
FINDINGS OF FACT Some of the facts have been stipulated and *210 are found accordingly. Petitioner was a legal resident of California at the time the petition was filed in this case. She filed her individual Federal income tax returns for 1968 and 1969 with the district director of internal revenue, Los Angeles, California. Petitioner, a motion picture and television actress, was born and reared in Louisiana. Prior to 1968, petitioner had been married, but was finally and legally divorced before 1968. Petitioner has a minor son, Danny Bourgeois, who was born on September 14, 1954. Prior to 1959, petitioner lived with her son, her nephew, Michael, and her parents in the home in which she had been reared. Michael lived with petitioner's parents because his mother had died. In 1959, petitioner went to New York to find work. Petitioner left Danny with her parents; she stayed in New York for about seven months. After she left New York, petitioner went to California where she started her career in the entertainment industry. In 1963, petitioner's father purchased a farm in Louisiana. Petitioner helped pay for it and title to the property was in her name. Petitioner's son, Danny, her nephew, Michael, and her parents lived on the farm *211 while petitioner was in California. Petitioner left Danny with her parents in Louisiana because she did not want Danny and Michael to be separated and because her parents could give Danny a better background than she could. During the years in issue, petitioner paid for the complete costs and expenses of supporting and educating Danny. During these years, petitioner paid over one-half of the entire cost of maintaining the household on the Louisiana farm. Petitioner lived in a duplex apartment in Los Angeles during the years in issue. The apartment had two bedrooms and a den. On various occasions, petitioner would visit Danny in Louisiana, or he would visit her in Los Angeles. One of the rooms in the Los Angeles apartment was considered to be Danny's room and generally was not used by anyone else, unless by one of the other children in the Louisiana family who came with him. At the Louisiana farm, petitioner had a bedroom, which sometimes was used by others when she was not there. As a general practice, petitioner was at the Louisiana farm for about a month in the summer. She also tried to make trips to the farm at Christmas and New Years. Petitioner also made trips *212 to the farm when she was able to get a job near there.Danny sometimes stayed with petitioner in Los Angeles during his Easter vacation. Once or twice Danny went to Los Angeles over Christmas when petitioner was not able to make the trip to the Louisiana farm. When Danny was in California, he and petitioner frequently went to Arrowhead and Palm Springs, where they stayed overnight. If petitioner was working while Danny was in Los Angeles, she had friends take care of him and entertain him. Petitioner kept some of Danny's belongings at the Los Angeles apartment, including his surf board and athletic equipment. With regard to 1968 and 1969, the taxable years in issue, petitioner could not recall the exact dates when she was in Louisiana or when Danny was in Los Angeles. Invoices of a travel agency verify that petitioner made three round trips between Los Angeles and Louisiana in 1968. These invoices also verify that Danny made three round trips between Louisiana and Los Angeles in 1968. The record does not reveal the duration of any of these visits. Although the travel agency invoices do not verify any trips between Louisiana and Los Angeles by either petitioner or Danny during *213 1969, a medical invoice establishes that Danny was in Los Angeles on one occasion in that year. During 1968 and 1969, petitioner was registered to vote in California. Petitioner's business matters during the years in issue were handled by the business management firm of Alexander Tucker of Los Angeles, California. During the years in issue, petitioner's agent was located in Los Angeles, California. During these years, petitioner maintained a safe deposit box in Los Angeles. Also during these years, petitioner received interest from four financial institutions located in the Los Angeles area. OPINION The issue for decision is whether petitioner satisfies the requirements of section 1(b) (2) (A) and thereby qualifies as a "head of a household" for such years. The parties agree that the petitioner meets all but one of the statutory requirements to qualify as a "head of a household." The question in dispute is whether the petitioner maintained as a home a household that constitutes the principal place of abode of petitioner's son. Section 1.1-2(c) (1), Income Tax Regulations, provides as follows: In order for the taxpayer to be considered a head of a household by reason *214 of any individual described in subparagraph (A) of section 1(b) (2), the household must actually constitute the home of the taxpayer for his taxable year. * * * It is not sufficient that the taxpayer maintain the household without being its occupant. The taxpayer and such other person must occupy the household for the entire taxable year of the taxpayer. * * * The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. * * * The validity of these regulations has been upheld by this Court. James J. Prendergast, 57 T.C. 475 (1972), affd. 483 F.2d 970 (C.A. 9, 1973); W. E. Grace, 51 T.C. 685 (1969), affd. per curiam 421 F.2d 165 (C.A. 5, 1969). The petitioner argues that she and Danny had homes in both Los Angeles and Louisiana, but that the Louisiana farm was the principal place of abode for both. Although agreeing that Danny's principal place of abode during the years in issue was the Louisiana farm, the respondent argues that the petitioner's principal place of abode during these years was *215 her apartment in Los Angeles. Since the parties agree that the Louisiana farm was Danny's principal place of abode, it only remains for us to determine whether petitioner maintained as her home the household at the Louisiana farm. Although the record shows that petitioner maintained the household at the Louisiana farm, we find that she did not maintain it as her home and that she therefore fails to qualify as a "head of a household." We believe that the Louisiana farm was a place that petitioner visited infrequently rather than her home. On the basis of the evidence presented at trial, we were able to verify only three trips by petitioner to Louisiana during the taxable years 1968 and 1969. The record does not establish the duration of any of these visits. Furthermore, during these years, petitioner was registered to vote in California and conducted her business matters in Los Angeles. Petitioner contends that we are bound by the Ninth Circuit's decision in Smith v. Commissioner, 332 F.2d 671 (C.A. 9, 1964), reversing 40 T.C. 591 (1963). The taxpayer in Smith maintained a home in Reno, Nevada, her principal place of abode, and one in Beverly Hills, *216 California, the principal place of abode of her adopted son. When not traveling, she spent sixty percent of her time at the Nevada home and forty percent at the California home. In the context of this factual situation, the Smith court construed section 1(b) (2) (A) to mean that the household required to be maintained has to be, in some sense, the taxpayer's actual, though not principal, place of abode. See W. E. Grace, supra.Having found that the taxpayer had two homes and that the California home was an "actual place of abode" of the taxpayer, the Smith court held that the taxpayer qualified as a "head of a household." In the present case we have found that the taxpayer had only one home and that the Louisiana farm was not an actual place of abode of the petitioner. We therefore conclude that the Smith case is factually distinguishable. We have found that the petitioner's only place of abode during the years in issue was her Los Angeles apartment and that the Louisiana farm was only a place she infrequently visited. Although the petitioner has failed to prove the actual percentage of her time that she spent in Louisiana during the years in issue, it was substantially *217 less than the amount of time that the taxpayer in Smith spent at her adopted son's principal place of abode. See Roberts v. United States, 337 F. Supp. 1188 (N.D. Cal. 1971). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise indicated. ↩