DAVID H. ROTROFF, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rotroff v. Commissioner
Docket No. 3556-76.
United States Tax Court
T.C. Memo 1978-46; 1978 Tax Ct. Memo LEXIS 467; 37 T.C.M. (CCH) 247; T.C.M. (RIA) 780046; January 31, 1978, Filed H. Wayne Grant and Richard G. Bonnington, for the petitioner. *468 Stanley H. Smith, Jr., for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioner's 1974 individual Federal income tax in the amount of $465.46.The petitioner has conceded one of the adjustments made in the notice of deficiency, and the only remaining issue is whether petitioner was entitled to calculate his tax using head of household rates. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioner David H. Rotroff resided in Hixson, Tennessee, at the time his petition in this case was filed. He filed his individual Federal income tax return for the calendar year 1974 with the Internal Revenue Service Center in Memphis, Tennessee. At the beginning of 1974 petitioner and Marianna Rotroff were married and lived with their three- or four-year-old daughter, Angela, in a home in Hixson, Hamilton County, Tennessee. (Hixson is part of or a subrb of Chattanooga.) Sometime prior to August 1, 1974, petitioner and Marianna experienced marital difficulties and Marianna determined *469 to separate from petitioner. In July 1974 she took Angela and moved to her parents' home in Tullahoma, Tennessee, which is approximately 60-65 miles from Chattanooga. Shortly thereafter Marianna commenced proceedings for a divorce from petitioner, and such divorce was granted, on the ground of "cruel and inhuman conduct", by Decree of the Chancery Court of Hamilton County, Tennessee, entered August 12, 1974, and filed on or about September 20, 1974. The divorce Decree granted custody of Angela to Marianna and required petitioner to pay Marianna a lump-sum alimony settlement and $200 per month child support for Angela. The Decree, in addition, affirmed a property settlement which had been agreed upon by petitioner and Marianna. Petitioner permitted Marianna to obtain an uncontested divorce notwithstanding the fact that he hoped to effect a reconciliation with her and did not personally desire the divorce. Subsequent to the divorce Marianna continued to live with her parents in Tullahoma, Tennessee.Angela resided with Marianna, but visited petitioner in his home on some weekends and in addition spent occasional Fridays with petitioner when petitioner happened to be near Tullahoma *470 on business. Petitioner continued to maintain the home in Hixson, which he obtained pursuant to the property settlement. Although Marianna and Angela had taken certain personal effects with them to Tullahoma, other items of clothing, toys, etc., remained in the house in Hixson. Petitioner provided virtually all of the funds for Angela's support, and much or all of Marianna's, except for the value of food and lodging supplied by Marianna's parents. [1]
In about October 1974, Marianna and Angela returned to the home in Hixson. Petitioner and Marianna became reconciled and resumed cohabitation, although they did not legally remarry. Petitioner and Marianna were still living together in the Hixson house, with Angela, at the time of the trial of this action. The petitioner, in his 1974 income tax return, calculated his tax using the head of household rates prescribed by section 1(b), I.R.C. 1954. The Commissioner recalculated petitioner's tax using the rates prescribed for unmarried *471 individuals by section 1(c), [2] and determined a deficiency accordingly. OPINION The sole issue presented by this case is whether petitioner was entitled to calculate his tax using the rates prescribed by section 1(b), I.R.C. 1954, for heads of households. It is undisputed that petitioner was an unmarried individual (not a surviving spouse or a nonresident alien) who maintained as his home a household in Hixson, Tennessee. See sections 2(b)(1)(A), 2(b)(3)(A). And it is equally clear that Angela was a dependent by reason of whom petitioner might quality as a head of household. See sections 2(b)(1)(A)(i), 2(b)(3)(B). The only dispute is whether petitioner's home in Hixson constituted, in 1974, Angela's "principal place of abode, as a member of such household * * *". See section 2(b)(1)(A). And the Treasury regulations make it clear that, in order for petitioner to qualify as a head of household, his home must have constituted Angela's principal place of abode for the entire 1974 taxable year. Section 1.2-2(c)(1), Income Tax Regs.; Prendergast v. Commissioner, 57 T.C. 475, 478, *472 affirmed 483 F. 2d 970 (C.A. 9). The regulations set forth the following standard for determining whether actual absence from a taxpayer's home constitutes merely a temporary absence as opposed to establishment of a different "principal place of abode": The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness, education * * * or a custody agreement under which a child or stepchild is absent for less than 6 months in the taxable year of the taxpayer, shall be considered temporary absence due to special circumstances. Such absence will not prevent the taxpayer from being considered as maintaining a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return.(Emphasis supplied.) Section 1.2-2(c)(1), Income Tax Regs. The critical issue under these regulations is whether, during *473 Angela's stay with her mother and grandparents, it was reasonable to assume that she would eventually return to petitioner's household in Hixson. [3] And although we believe petitioner's claim that he hoped for and expected a reconciliation and return of his wife and child, we think that such hope on his part did not constitute a reasonable expectation within the meaning of the regulations. Marianna had, after all, obtained a final decree of divorce from petitioner which granted her custody of Angela. She had taken Angela to live with her parents at some distance from petitioner, and had at least begun the process of removing her personal effects from petitioner's house in Hixson. Petitioner's visits with his daughter during the period of separation from Marianna were not inconsistent with the final Decree of divorce which awarded exclusive custody of the child to Marianna subject to visitation rights. We think Marianna's actions were sufficient to establish that Angela's principal place of abode during the period from July through October 1974 was in Tullahoma, not Hixson. And since petitioner did not maintain a home which was Angela's principal place of abode for the entire 1974 *474 taxable year, he is not entitled to calculate his tax as a head of household. See Prendergast v. Commissioner, supra, 57 T.C. 475, 479-481, affirmed 483 F. 2d 970 (C.A. 9); Ruff v. Commissioner, 52 T.C. 576, 579.
The only other issue raised by the notice of deficiency having been conceded by petitioner, Decision will be entered for the respondent. Footnotes
1. Marianna was employed intermittently in Chattanooga in the field of advertising, but it is not clear whether she was employed or had any earnings during the period of her residence in Tullahoma.↩
2. The Commissioner made a second adjustment which has been conceded by petitioner.↩
3. It is true that Angela was absent from petitioner's household for less than six months during 1974, and that her absence resulted from a custody agreement. But that is not enough to make petitioner a head of household where the custody agreement does not by its terms require that Angela remain with the petitioner for more than six months each year, and where the expectation is that Angela will actually establish a new principal place of abode with her mother. See Stanback v. United States,     F. Supp.    , 39 A.F.T.R. 2d 77↩-805, 77-1U.S.T.C. par. 9181 (M.D. N.C. Jan. 20, 1977).