Winona Bell Hunt v. Commissioner.
Hunt v. Commissioner
Docket No. 666-70.
United States Tax Court
T.C. Memo 1972-226; 1972 Tax Ct. Memo LEXIS 31; 31 T.C.M. (CCH) 1119; T.C.M. (RIA) 72226; November 6, 1972
Fuller Holloway and Bernard T. Renzy, 888 Seventeenth St., Wash., D.C., for the petitioner. Clarence F. Frazier, Jr., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in petitioner's income tax: Year
Deficiency
1965
$1,629.70
1966
1,207.46
1967
1,688.00 At issue is the correctness of the Commissioner's action in: (1) computing petitioner's tax liability for each year at single rates rather than at head of household rates on the basis of which petitioner's returns were filed; (2) disallowing $1,053.71 of the $9,648 medical expense deduction petitioner claimed for 1966; and (3) disallowing a 1967 dependency exemption for petitioner's son John. Findings of Fact The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference. *33 Winona Bell Hunt ("petitioner" or "Mrs. Hunt") is a divorced woman. She has twice been married. She married John Williamson in 1938 and gave birth to a son, John, in 1940. That marriage lasted approximately two years. She remarried in 1948 and was divorced from her second husband, Colonel Robert F. Hunt, Jr., in or about 1962. Following her divorce from Colonel Hunt, Mrs. Hunt remained single at least through 1967. Since 1960 she has lived in her own home in Palm Beach, Florida, and she has operated a ladies' clothing shop in that city since 1963. Petitioner's Federal income tax returns for 1965, 1966 and 1967 were prepared on the cash basis and filed with the district director of internal revenue at Jacksonville, Florida. She resided in Palm Beach when her petition herein was filed. 1. Head of household tax computation. Mrs. Hunt has endured the frustration of seeing her son John drift purposelessly from one endeavor to another for most of his mature life. Upon graduating from preparatory school at the age of 16, John enrolled in the University of Florida, but he left college after one semester and joined the Navy in 1958. After two years in the service John returned to the University *34 of Florida and remained there for only about six weeks. He then went to Salina, Kansas, where his stepfather, Colonel Hunt, was stationed, and entered Kansas Wesleyan University sometime in 1961. Colonel and Mrs. Hunt separated while John was in school, and Mrs. Hunt was awarded custody of her son pursuant to a court order. John remained at Kansas Wesleyan until early 1964, when he moved to Seattle, Washington. In Seattle he resided with the family of a young woman he had known in Kansas. He worked briefly at a bank in Seattle during 1964 and traveled to Lake Tahoe in early 1965 to seek new employment, but without success. By this time John felt that he required professional psychiatric assistance, and he solicited his mother's help. She turned to 1121 Colonel Hunt, who arranged for John to be admitted to the Menninger Clinic at Topeka, Kansas. John became an inpatient at the clinic on June 28, 1965, and he remained such until March 27, 1966, when he was placed in the home of a Topeka family who cared for him in accordance with the Clinic's instructions. During his stay with this family, he again made abortive attempts to obtain permanent employment and to return to college. *35 John's program of treatment at the Menninger Clinic terminated on January 6, 1967, and he decided to remain in Topeka. He worked intermittently as a guitar player and lived in Topeka until sometime in 1969, when he moved to Boston, Massachusetts, to enter the Berkeley School of Music. John attended the Berkeley School until the time of his marriage in late 1971 or early 1972. At the time of the trial herein, he resided in Manchester, Vermont. Mrs. Hunt's opportunities to visit with her son during these years were necessarily limited. John regularly spent his vacations with Mrs. Hunt while he was attending Kansas Wesleyan University from 1961 to 1964 and the Berkeley School of Music from 1969 to 1971. Sometimes he would vacation at his mother's home in Palm Beach, where his room was always maintained and some of his belongings were stored, while at other times Mrs. Hunt would come to see John or take him along on occasional business or pleasure trips. Mrs. Hunt saw John only a few times from 1965 to 1967, the years at issue. During much of this time the Menninger Clinic restricted Mrs. Hunt's visits to John, and John came to Palm Beach only twice during this period, once for a brief *36 stay in the spring of 1965 and again in December of 1967 for the Christmas holidays. His visits to Palm Beach were more frequent and often longer during 1968 and 1969, when John was living in Topeka. Petitioner filed her returns for 1965, 1966 and 1967 as an "unmarried head of household". The Commissioner recomputed her tax for these years at single rates. 2. Medical expense deduction. Mrs. Hunt paid all of John's bills from the Menninger Clinic. Some of these bills included charges for amounts the Clinic had given John, or expended on his behalf, while he was living with his foster family in Topeka during 1966. Petitioner's payments to the Menninger Clinic in 1966 amounted to $10,326, and she computed the medical expense deduction on her tax return for that year using this full amount. The Commissioner determined that a portion of such expenditures, amounting to $734.32 and relating primarily to the period of John's residence with his foster family, represented personal expenses of John, not medical expenses. He further determined that an additional $67.69 of the $10,326 was not deductible by petitioner in 1966 because it was a payment for medical services not rendered until 1967. *37 The Menninger Clinic requested Mrs. Hunt to make occasional trips to Topeka to see John and to confer with members of the Clinic staff. These trips were an important and necessary part of John's treatment. Petitioner made three such trips in 1966, and she took travel expenses of $1,044 into account in computing her 1966 medical expense deduction. The Commissioner determined that $251.67 of such travel expenses were spent for meals and lodging, and he disallowed her a deduction to this extent. Thus, of $11,967 of claimed medical expenses incurred by Mrs. Hunt in 1966, [1] the Commissioner disallowed the aggregate amount of $1,053.71 ($734.32 + $67.69 + $251.67). [2] John was a dependent of Mrs. Hunt in 1966. 3. Dependency exemption. As a part-time guitar player in Topeka, John contributed towards his own support after leaving *38 the Menninger Clinic in early 1967. Mrs. Hunt also gave him cash from time to time during 1967. The record does not adequately disclose the amount of either Mrs. Hunt's or John's respective shares in supporting John, nor does it establish the amount of John's 1967 gross income. The Commissioner disallowed the dependency exemption petitioner claimed for John on her 1967 return. Opinion RAUM, Judge: 1. Head of household tax computation. Under section 1(b) of the 1954 Code a "head of a household" may compute his tax liability at rates lower than those prescribed in section 1(c) for other unmarried persons. "Head of a household" 1122 is defined in section 2(b) of the Code. [3] Pursuant to that section, Mrs. Hunt was entitled to compute her tax for the years 1965, 1966 and 1967 at the special rates provided by section 1(b) if her homs was the "principal place of abode" of her son John during such years. *39 The only evidence relating to John's places of abode during the years at issue consisted of Mrs. Hunt's own testimony and certain disclosures made in a letter written by Dr. W. Walter Menninger of the Menninger Clinic, where John underwent treatment for psychological disorders. Mrs. Hunt was entirely candid, but her recollection as to John's whereabouts from 1965 through 1967 was rather vague. She could recall only two occasions when John stayed at her home in Palm Beach, Florida, during the years 1965 through 1967, and each visit was apparently a short one. For the first few months of 1965 John lived in various places in the western United States, perhaps briefly holding one or two jobs. Dr. Menninger's letter indicates that whenever John undertook a new pursuit he became "intensely involved", suggesting that he may have regarded it as enduring in nature, and that he thus expected to continue living away from his mother's household more or less permanently. Mrs. Hunt's testimony plainly shows that she understood her son's feelings in this respect. Dr. Menninger's letter further discloses that John was reluctant to return to his mother's home in Florida upon the termination of his *40 year and a half of treatment at the Menninger Clinic in January of 1967. Indeed, he did not visit her home until Christmas of that year. He continued to live in Topeka for the remainder of the year, taking intermittent jobs as a musician, and he also spent most of his time away from Mrs. Hunt's residence during the years surrounding those at issue. In the circumstances, it was not reasonable to assume that John would ever return to his mother's household, as would be necessary to regard him as "occupying" such household as his principal place of abode notwithstanding his absence therefrom. See section 1.2-2(c) (1), Income Tax Regs., cited with approval in Alex A. Ruff, 52 T.C. 576 at 578-579. Some of the explanations for John's absence, viewed in isolation, might have justified a conclusion that he was only "temporarily" away from home, [4] but considered together in the context of John's peripatetic life style, they more convincingly suggest that Mrs. Hunt's household was not his principal place of abode, at least from 1965 through 1967. We hold that she therefore did not qualify for favorable "head of a household" tax rates for those years. *41 2. Medical expense deduction. The Commissioner disallowed three classes of items which petitioner had claimed as parts of her $9,648 medical expense deduction for 1966. The substance of his argument with respect to two such classes of items is that the disallowed amounts did not represent expenditures for "medical care" within the meaning of section 213(e)(1), I.R.C. 1954.[5] The purpose of section 213(e)(1) is "to deny deductions for all personal or living 1123 expenses incidental to medical treatment other than the cost of transportation of the patient alone". Commissioner v. Bilder, 369 U.S. 499, 501-502. See also Wade Volwiler, 57 T.C. 367. The petitioner has offered no evidence tending to contradict the Commissioner's determination that a portion of her payments to the Menninger Clinic, amounting to $734.32, was used by the Clinic to defray personal or living expenses incurred by John primarily during the period of his residence with his foster family in Topeka. Although such amounts were included in the Clinic's bills to petitioner, we think they cannot be converted into deductible items for this reason alone, since petitioner has not shown that *42 such charges reflected to any extent the cost of medical services performed by the Clinic. Nor has petitioner shown that $251.67 of travel expenses incurred by Mrs. Hunt in connection with her trips to Topeka did not represent amounts she expended for meals and lodging while staying in Topeka. She has therefore failed to establish her right to deduct the $251.67 under section 213, notwithstanding that such expenses were incurred during trips taken for prescribed medical purposes. See Robert M. Rose, 52 T.C. 521, affirmed per curiam 435 F. 2d 149 (C.A. 5), certiorari denied 402 U.S. 907; Max Carasso, 34 T.C. 1139, affirmed 292 F. 2d 367 (C.A. 2), certiorari denied 369 U.S. 874; section 1.213-1 (e)(1)(iv), Income Tax Regs., cited with approval in Commissioner v. Bilder, 369 U.S. 499, 503, footnote 4; cf. Morris C. Montgomery, 51 T.C. 410, affirmed 428 F. 2d 243 (C.A. 6). Accordingly, the Commissioner's determinations with respect to the foregoing two classes of items are sustained. *43 The third class of disallowed items consists of two 1966 payments to the Clinic, amounting to $67.69, for medical services which the Commissioner determined were not rendered until 1967. Again, the petitioner has failed to demonstrate that the Commissioner's description of such payments was erroneous. Advance payments for medical care provided in a subsequent tax year are not deductible in the year of payment under section 213, even by a taxpayer using the cash basis of accounting. See Robert M. Rose, supra, 52 T.C. at 532; Robert S. Bassett, 26 T.C. 619. [6] We therefore affirm the Commissioner's disallowance of a 1966 deduction in respect of petitioner's advance payments.
3. Dependency exemption. John was more than 19 years old in 1967 and he was not a student that year. Therefore, *44 for petitioner to justify her claim to a 1967 dependency exemption for John under section 151, I.R.C. 1954, she would have to prove that his gross income in 1967 was less than $600 and, pursuant to section 152(a), that he received over half his support for such year from his mother. On the record before us, we cannot find that either of these requirements has been satisfied, and accordingly we must approve the Commissioner's disallowance to petitioner of an exemption in respect of her son for 1967. Cf. Robert I. Brown, 48 T.C. 42. Decision will be entered for the respondent. Footnotes
1. On her 1966 return petitioner claimed a deduction for medical expenses of only $9,648. The limitations in section 213(a)(1)↩ of the 1954 Code precluded her from deducting the full amount of her claimed medical expenses. 2. There is an unexplained difference of three cents between the aggregate amount disallowed and the sum of its individual components.↩
3. Section 2(b) provides, in relevant part, as follows: SEC. 2. DEFINITIONS AND SPECIAL RULES. * * * (b) Definition of Head of Household. - (1) In general. - For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, * * * and * * * (A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of - (i) a son * * * of the taxpayer * * *. * * * For purposes of this paragraph, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual. (2) Determination of Status. - For purposes of this subsection - * * * (B) an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married * * *.↩
4. Cf. Walter J. Hein, 28 T.C. 826, acq. 1958-2 C.B. 6, and Reardon v. United States, 158 F. Supp. 745↩ (D. S.D.), both of which cases are relied upon by the petitioner.
5. As applicable to the year 1966, section 213 (e)(1) provided as follows: SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. * * * (e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or (B) for transportation primarily for an essential to medical care referred to in subparagraph (A).↩
6. No issue has been raised as to the deductibility of such payments in 1967. Even if the advance payments of $67.69 from 1966 were added to petitioner's other 1967 medical expenses, which are shown in the record, the aggregate amount would not exceed the limitations in section 213(a)(1), I.R.C. 1954↩, and thus she was entitled to no 1967 medical deduction in any event.