128 T.C. No. 3


UNITED STATES TAX COURT



CYNTHIA L. ROWE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17856-04.                    Filed February 22, 2007.


     P and her two young children lived together in 2002
until her arrest on June 5.  P continued to support her
children after her arrest until July 2, but P was confined
in jail for the rest of the year.

     P claimed an earned income credit (EIC) on her Federal
income tax return for 2002 and received an EIC of $1,070.
R then denied the EIC, claiming that P did not have the same
principal place of abode as her children for more than half
of the year.  P argues that, although she was jailed for the
rest of 2002 after her arrest on June 5, the home where she
lived with her children before her arrest still constituted
the principal place of abode for her and her children for
all of 2002.

     <u>Held</u>:  P is eligible for the EIC for 2002.  P's absence
due to being held in jail after her arrest does not prevent
her from qualifying for the EIC.

Cynthia L. Rowe, pro se.

Kelly A. Blaine, for respondent.

OPINION

KROUPA, Judge:  Respondent determined a $1,070 deficiency in petitioner's Federal income tax for 2002.  The issue to be decided is whether petitioner is eligible to claim an earned income credit (EIC) in 2002.  We hold that she is.

Background

This case was fully stipulated under Rule 122.[1]  The stipulation of facts and the attached exhibits are incorporated by this reference.  Petitioner was incarcerated in the Coffee Creek Correctional Facility in Wilsonville, Oregon, when she filed the petition.

Petitioner and her two children lived together for the first part of 2002, first at a home on Marcum Lane in Eugene, Oregon, and then at the home of petitioner's mother-in-law.  Petitioner was arrested on June 5, 2002, and was held in jail for the remainder of the year.  The father of petitioner's two children moved into his mother's home to care for the children after petitioner was arrested.

_____

[1]All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Petitioner supported herself and her children in 2002 with wages, unemployment benefits, food stamps, and welfare medical assistance until she was arrested. Petitioner continued to support her children even after her arrest until July 2, 2002, when the Children's Services Division of the State of Oregon began providing petitioner's children financial and medical assistance in their own names. Petitioner was ultimately convicted of murder in 2003 and is presently serving a life sentence at the Coffee Creek Correctional Facility. Petitioner's conviction was pending on appeal when this case was submitted.

Petitioner timely filed a Federal income tax return for 2002 claiming head of household status. She claimed her children as dependents and also claimed an EIC. She stated on Schedule EIC, Earned Income Credit, that she lived with her children for more than half of 2002 but less than 7 months. Petitioner received $1,070 for the EIC.

Respondent issued petitioner a deficiency notice concluding that petitioner was not eligible for the EIC because she did not share the same principal place of abode with her children for more than half of 2002.[2]

---

[2]Respondent also concluded that petitioner was not eligible to file as head of household or to claim dependency exemptions for her children. Respondent's disallowance of the head of household filing status had no effect on petitioner's tax liability for 2002 because her standard deductions and exemptions exceeded her adjusted gross income. Respondent has since

(continued...)

Petitioner timely filed a petition and, at the Court's direction, an amended petition complying with the Court's Rules.

## Discussion

We are asked to decide whether petitioner is eligible for the EIC. We begin by explaining the EIC in general terms. An eligible individual is entitled to an EIC against the individual's income tax liability, subject to certain requirements. Sec. 32(a)(1). Different percentages and amounts are used to calculate the credit depending on whether the eligible individual has no qualifying children, one qualifying child, or two or more qualifying children. Sec. 32(b).

Petitioner claims the EIC with respect to two or more qualifying children. Certain requirements must be met to be eligible to claim an EIC with respect to qualifying children. Respondent concedes that petitioner has satisfied the age, identification, and relationship requirements with respect to her two children. See sec. 32(c)(3). The issue in dispute concerns the residency requirement. The residency requirement mandates that the taxpayer and the children must share the same principal place of abode for more than half of the taxable year for which the EIC is claimed. Sec. 32(c)(3).

---

[2](...continued)
conceded that petitioner was eligible to claim the dependency exemptions for her children.

Respondent argues that petitioner and her children did not satisfy the residency requirement because petitioner was held in jail for the rest of the year after her arrest on June 5. Petitioner, on the other hand, argues that she and her children satisfied the residency requirement. Petitioner asserts that she resided with her children in 2002, first at the Marcum Lane home and then at her mother-in-law's home. She argues that her mother-in-law's home was the residence for her and her children from the day they moved there through the rest of the year. Petitioner essentially asserts that, although she was arrested on June 5 and held in jail for the remainder of the year, her absence was temporary. We agree with petitioner.

A.    The "Same Principal Place of Abode" Test

We now examine the residency requirement that a taxpayer and his or her children must share the "same principal place of abode" for more than half the year for which the EIC is claimed. We also consider what types of absences from the home are permitted while still allowing the home to qualify as the principal place of abode. Sec. 32(c)(3).

The phrase "same principal place of abode" is not defined in section 32 or the regulations under that section. The legislative history of section 32, however, provides some guidance on the meaning of this phrase, and, specifically, how Congress intended absences from the home to be treated. Congress

intended that rules similar to those for determining head of household filing status under section 1(b) should apply in determining whether the residency requirement of the EIC is met. H. Conf. Rept. 101-964, at 1037 (1990), 1991-2 C.B. 560, 564. Congress also stated that certain temporary absences, such as those for education or illness, should not be counted against taxpayers in determining whether taxpayers lived with a qualifying child for more than half the taxable year for which the EIC is claimed. Id.

B.    Head of Household Filing Status Provisions

We accordingly look to the head of household filing status provisions for guidance on how absences from the home are to be treated in determining the principal place of abode. See id. The head of household provisions contain certain requirements for a taxpayer to file a tax return as a head of household. Sec. 2(b). One requirement is that the taxpayer must maintain as his or her home a household that constitutes the principal place of abode for a qualifying child or certain other persons for more than half the year. Sec. 2(b)(1)(A).

Regulations under this section further elaborate on the treatment of absences from the home. Sec. 1.2-2(c)(1), Income Tax Regs. While the taxpayer must live in the household and not simply maintain it, temporary absences, generally out of necessity, are permitted under certain circumstances. Id.; see

Prendergast v. Commissioner, 57 T.C. 475, 480 (1972), affd. 483 F.2d 970 (9th Cir. 1973).  Nonpermanent failures to occupy the home for reasons such as illness, education, business, vacation, military service, or a custody agreement do not cause a taxpayer to lose head of household filing status.  Sec. 1.2-2(c)(1), Income Tax Regs.  A taxpayer may still have the same principal place of abode despite a temporary absence if it is reasonable to assume that the taxpayer will return to the household and the taxpayer continues to maintain the household during the temporary absence.  Id.

      C.    Pre-Conviction Incarceration as a Temporary Absence

We next consider how an absence from the home due to jail confinement after an arrest (but before a conviction or other case disposition) should be treated, taking into account the guidance provided by the head of household regulations.  Absence due to jail confinement after an arrest is not one of the permitted or listed absences under the head of household regulations.  Failure of this type of absence to be included in the list, however, is not fatal to petitioner's case.  Congress intended for similar, not identical, rules to apply to determine whether the residency requirement is met for EIC purposes.  See H. Conf. Rept. 101-964, supra at 1037, 1991-2 C.B. at 564.  Also, we have previously indicated that the list of reasons for a nonpermanent failure to occupy the home in the regulations is not

an exclusive list. Prendergast v. Commissioner, supra at 480. Rather, we found that the list is only a guide for distinguishing temporary absences for necessitous reasons from more permanent absences for nonnecessitous reasons. Id.

Jail confinement after an arrest but before conviction is a type of absence that is of a necessitous variety and also nonpermanent. An individual confined in jail after being arrested has a unique, temporary status. The criminal process will continue through several stages, which may include charging, possible plea bargaining, trial, conviction, sentencing, and appeal, each of which will directly affect the individual's status. These subsequent stages of the criminal process after arrest will determine whether the arrested person is ultimately incarcerated or released. We find that an individual confined in jail after an arrest but before conviction is necessarily, but nonpermanently, absent from his or her home. Such an individual generally intends to return home, just as an individual in military service or afflicted by illness intends to return home once he or she is able. Thus, the necessary, nonpermanent absence of jail confinement is similar to those examples listed

in the head of household regulations.[3]  See id.; sec. 1.2-2(c)(1), Income Tax Regs.

D.    Reasonableness of Assumption That Petitioner Would Return

Temporary absences, like those outlined in the regulations as well as jail confinement after an arrest, are permitted if it is reasonable to assume the taxpayer will return to his or her home after the temporary absence.  See sec. 1.2-2(c)(1), Income Tax Regs.  We therefore now consider whether it is reasonable to assume that petitioner, who was temporarily absent from her home in 2002 due to her arrest and jail confinement but before her conviction, would return to her home.

We have previously established factors to rely on in making this determination.  Hein v. Commissioner, 28 T.C. 826 (1957).  In Hein, we were asked to consider whether a taxpayer and his 72-year-old sister, Emilie, had the same principal place of abode.  Id. at 830.  The taxpayer and Emilie had lived together for approximately 30 years, but Emilie had been confined in a mental health facility for the 6 years before the year at issue and therefore was absent from the taxpayer's home during the year at

---

[3]We also note that the Commissioner has indicated that "detention in a juvenile facility" is a temporary absence that counts as time lived at home for purposes of the EIC.  See Serv. Ctr. Advice 200002043 (Jan. 14, 2000); 2002 Instructions to Form 1040, line 64, Earned Income Credit; cf. sec. 1.6015-3(b)(3), Income Tax Regs. (spouse's temporary absence from household due to incarceration does not prevent spouses from being considered members of the same household).

issue.  Id. at 828.  In finding that the taxpayer and Emilie had the same principal place of abode, we focused on the taxpayer's and Emilie's intent that Emilie would return to the taxpayer's home if she were released.  Id. at 834-835.  Moreover, even though it was unlikely that Emilie would ever recover her health and leave the facility, we emphasized that there were no indications that Emilie had chosen a new permanent habitation. Id.

We apply the factors we set forth in Hein to the circumstances here and conclude that it was reasonable to assume petitioner would return to her home with her children.  The criminal case against petitioner was still pending at the end of 2002 and she had not been convicted.  As in Hein, there are no indications in the record that petitioner intended to choose a new home.  See id.  In fact, petitioner refers to her mother-in-law's home as "my home" in documents she filed with the Court.

We decline to assess objectively the strength of the criminal charges against petitioner or require petitioner to show the weakness of the charges against her to determine whether it was reasonable to assume she would return to her home.  Such an analysis would require us to assess the strengths and weaknesses of the criminal case against petitioner.  In addition, we would have to consider other factors such as petitioner's financial status and assets to estimate whether she could have made bail,

the likelihood of a plea bargain, or perhaps estimate the length of a sentence or the likelihood of success on appeal if we found petitioner likely would have been convicted.  These inquiries are best left to the criminal process to address.  We shall not assess the merits of a criminal case to determine whether a taxpayer is eligible for the EIC.

We conclude that, although petitioner had been arrested and was confined in jail through the end of 2002, it was reasonable to assume she would return to her home because she had not chosen a new home.  Accordingly, we find that her temporary absence due to jail confinement after her arrest but before conviction does not disqualify her from eligibility for the EIC for 2002.[4]

We note that our holding will apply only to an extraordinarily narrow category of taxpayers because Congress has limited the circumstances in which the EIC is available to inmates at correctional institutions.  Income those inmates earn is not considered income for EIC purposes.  Sec. 32(c)(2)(B)(iv). Accordingly, any income that petitioner earns while she serves her sentence as an inmate at a correctional facility is not taken

---

[4]We note that the regulations concerning head of household filing status also require that taxpayers maintain the household during their temporary absence in anticipation of returning.  We are not required to consider that requirement in the EIC context. Maintaining a household is not a requirement of sec. 32.  The EIC rules simply require that the taxpayer and the person to be treated as a qualifying child have the same principal place of abode.  Secs. 32(c)(3), 152(c).

into account for EIC purposes. Id. Our holding, therefore, applies primarily to taxpayers who have earned income outside a correctional facility for part of a year and are then arrested and held in jail without conviction for the remainder of the year.

Congress has chosen to restrict the extent to which inmates at correctional institutions may obtain the EIC. Id. Absent direction from Congress, we do not find it appropriate under these circumstances to further restrict the application of the EIC also to exclude income a taxpayer earns before incarceration.

E. Conclusion

We hold that petitioner has satisfied the residency requirement to claim the EIC for 2002.

To reflect the foregoing,

Decision will be entered

for petitioner.

Reviewed by the Court.

COHEN, SWIFT, WELLS, and VASQUEZ, JJ., agree with this majority opinion.

LARO, FOLEY, GALE, THORNTON, and GOEKE, JJ., concurring in result only.

CHIECHI, J., did not participate in the consideration of this case.

GALE, J., concurring:  While I agree with the result reached in the principal opinion, I believe that, given the very narrow facts of this case and the opacity of respondent's position, it should be resolved in petitioner's favor on the basis that she is entitled to the benefits of Rev. Rul. 66-28, 1966-1 C.B. 31.  In that ruling, the Commissioner, on analogous narrow facts, treated an absence from the household as a "temporary absence due to special circumstances" without regard to whether it was reasonable to assume that return would occur.  In Rauenhorst v. Commissioner, 119 T.C. 157, 170-173 (2002), we refused to allow counsel for the Commissioner "to argue * * * against the principles and public guidance articulated in the Commissioner's currently outstanding revenue rulings."  I conclude that respondent's position in this case is sufficiently at variance with the principles of Rev. Rul. 66-28, supra, that petitioner should be permitted to rely on the ruling, given respondent's failure to address the ruling and distinguish it.

Rev. Rul. 66-28, 1966-1 C.B. at 32, is long-standing public guidance in which the Commissioner, following this Court's decision in Hein v. Commissioner, 28 T.C. 826 (1957), ruled that a "temporary absence due to special circumstances" (as used in the dependency exemption regulations at section 1.152-1(b), Income Tax Regs.) encompassed an extended stay in a nursing home notwithstanding the "possibility or probability" that death would

preclude a return to the household. In <u>Hein v. Commissioner</u>, <u>supra</u>, this Court had construed a "temporary absence due to special circumstances" (as used in a predecessor of the head of household regulations presently at section 1.2-2(c)(1), Income Tax Regs.[1]) to include an extended confinement in a sanatorium due to mental and physical illness, even though the prospects of recovery and return to the household were minimal. The Commissioner had contended in <u>Hein</u> that, given the claimed household member's advanced age and poor recovery prospects, her confinement was not a temporary absence because it was unreasonable to assume that she would return, presumably relying on the provision, now codified in section 1.2-2(c)(1), Income Tax

---

[1] The predecessor regulation was at sec. 1.1-2(c) of the regulations under the Internal Revenue Code of 1954 and earlier at sec. 39.12-4(c) of Regulations 118 under the Internal Revenue Code of 1939. The regulation has at all times contained the following language:

> The taxpayer and such other person [i.e., other occupant of the taxpayer's household] will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness, education, business, vacation, military service, or a custody agreement under which a child or stepchild is absent for less than six months in the taxable year of the taxpayer, shall be considered temporary absence due to special circumstances. Such absence will not prevent the taxpayer from being considered as maintaining a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household * * * .

Regs., which provides that an absence will be disregarded "if * * * it is reasonable to assume that the taxpayer or * * * [other household occupant] will return to the household".  This Court refused to apply a reasonable assumption of return standard in the case of a dependent who was absent due to an extended illness, concluding instead that in these circumstances "the true test is not whether the return may be prevented by an act of God, but rather whether there are indications that a new permanent habitation has been chosen."  Hein v. Commissioner, supra at 835.

The Commissioner subsequently acquiesced in Hein, 1958-2 C.B. 3, and then, in 1966, adopted it in a revenue ruling.  In Rev. Rul. 66-28, 1966-1 C.B. at 32, the Commissioner, relying on Hein, ruled that "confinement" to a nursing home due to illness would be considered a "temporary absence due to special circumstances" for purposes of the dependency exemption regulations (section 1.152-1(b), Income Tax Regs.), notwithstanding the extended length of the absence or the probability, given the dependent's age and condition, that return would not occur:

> In view of the decision in the Hein case, a period of time during which a dependent is confined to a nursing home because of illness will likewise be considered a temporary absence due to special circumstances for the purpose of section 152(a)(9) of the Code, even though such absence is for an extended period of time. There must, of course, be an absence of an intent on the part of the taxpayer and the dependent to change the dependent's principal place of abode. The possibility or probability that death might

> intervene before the dependent returns to the
> taxpayer's household is not sufficient to make such
> absence permanent. [1966-1 C.B. at 32.]

The Commissioner in Rev. Rul. 66-28, supra, thus eschewed reliance on any reasonable assumption of return standard in the case of absences due to extended illness and instead emphasized the absence of intent on the part of the taxpayer or dependent to change the dependent's place of abode.

As the dissenting opinion points out, the "temporary absence due to special circumstances" provisions in the head of household regulations addressed in Hein contain the requirement that it be "reasonable to assume that the [absent] taxpayer or * * * [absent occupant of the taxpayer's household] will return to the household", whereas the "temporary absence due to special circumstances" provisions in the dependency exemption regulations construed in Rev. Rul. 66-28, supra, contain no such provision. The dissenting opinion argues that this distinguishes Rev. Rul. 66-28, supra, from the instant case, which involves the head of household regulations. I disagree. There is no indication in Rev. Rul. 66-28, supra, that the Commissioner was seeking to distinguish the rules applicable to temporary absences due to illness in the case of the dependency exemption regulations versus the head of household regulations. To the contrary, the ruling characterizes the two regulations as "identical", thereby minimizing the significance of the reasonable assumption of

return clause contained in one of them--at least in the case of absences due to extended illness.  I believe the fair reading of Rev. Rul. 66-28, supra, is that the Commissioner decided, in the case of absences due to extended illness, to apply the Hein test of intent and give little or no weight to any reasonable assumption of return, whether for purposes of the dependency exemption regulations or the head of household regulations.

Rev. Rul. 66-28, supra, has stood unmodified for more than 40 years and is now recognized by Congress as part of the present law defining eligibility for the dependency exemption, head of household filing status, and the earned income credit (the rules for which incorporate the head of household standards).  For example, the description of the present law concerning the dependency exemption contained in H. Conf. Rept. 108-696, at 56 (2004), states:

> A taxpayer or other individual does not fail to be considered a member of a household because of "temporary" absences due to special circumstances, including absences due to illness, education, business, vacation, and military service. * * * Indefinite absences that last for more than the taxable year may be considered "temporary".  For example, the IRS has ruled that an elderly woman who was indefinitely confined to a nursing home was temporarily absent from a taxpayer's household.  Under the facts of the ruling, the woman had been an occupant of the household before being confined to a nursing home, the confinement had extended for several years, and it was possible that the woman would die before becoming well enough to return to the taxpayer's household.  There was no intent on the part of the taxpayer or the woman to change her principal place of abode. [42]

[42] Rev. Rul. 66-28, supra, 1966-1 C.B. 31.

Consistent with the approach in Rev. Rul. 66-28, supra, the report also treats the principles of the ruling as equally applicable for dependency exemption, earned income credit, and head of household purposes.  Elsewhere in the same discussion of present law, the report describes the residency test for the earned income credit as follows:

> The residency test is satisfied if the individual has the same principal place of abode as the taxpayer for more than one half of the taxable year. * * * As under the dependency exemption (and head of household filing status), temporary absences due to special circumstances, including absences due to illness, education, business, vacation, and military service are not treated as absences for purposes of determining whether the residency test is satisfied. * * *  [H. Conf. Rept. 108-696, supra at 58; emphasis added.]

That is, the test for temporary absence due to special circumstance in the case of the earned income credit is the same "as under the dependency exemption (and head of household filing status)"; nowhere is it suggested that the test of temporary absence for purposes of head of household filing status and the earned income credit is more stringent than, or otherwise different from, the test applied for purposes of the dependency exemption.  To the same effect, see S. Rept. 108-257, at 81 (2004); H. Rept. 108-126, at 181 (2003); Jt. Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 108th Congress, at 120 n.199 (J. Comm. Print 2005).

The Commissioner, then, has issued widely recognized public guidance in which he equates the temporary absence provisions of the dependency exemption and head of household regulations, and indicates that at least in certain narrow circumstances little or no weight will be given to the reasonable assumption of return provision. Respondent's position in this case is far from clear. The case was submitted without briefs, and the only argument respondent advances to support his conclusion that petitioner fails to satisfy the residency test is as follows:

> Respondent's position is that sharing of the same principal place of abode requires that a "qualifying child" live with the taxpayer for more than one-half of the taxable year. The test is a "simple residence test" that bases eligibility on whether the taxpayer lived with her child for more than six months of the taxable year. Sherbo v. Commissioner, 255 F.3d 650, 654-55 (8th Cir. 2001).

> Petitioner and her children could not have lived together for more than half of the year because petitioner was in state custody for more than half of the 2002 taxable year.

Respondent does not even address the "temporary absence due to special circumstances" provision of the head of household regulations, let alone the reasonable assumption of return clause therein or Rev. Rul. 66-28, supra. Thus, I do not know whether respondent's position is that a parent's pretrial incarceration does not constitute a "temporary absence due to special circumstances" since it isn't among the listed circumstances in

the regulation, or that petitioner's incarceration, though concededly a special circumstance, is nonetheless disqualifying because it was not reasonable to assume that petitioner would return.  What is known about the Commissioner's position is that he has extended Rev. Rul. 66-28, supra, in Service Center Advice to cover a child's pretrial and post-conviction incarceration.  In Service Center Advice 200002043 (Jan. 14, 2000), the Commissioner advised whether a child's detention in a juvenile facility for a potentially extended period would qualify as a temporary absence due to special circumstances within the meaning of section 1.2-2(c)(1), Income Tax Regs. (and, consequently, for purposes of eligibility for the earned income credit).  The Advice concludes:  "Detention in a juvenile facility pending trial is a temporary absence * * * due to special circumstances if there is no intent on the part of the taxpayer and child to change the child's principal place of abode."  Explaining the conclusion, the Advice states:

> Detention in a juvenile facility pending trial can be a temporary absence notwithstanding the possibility that the child may be detained after the trial for an extended period of time in a juvenile facility.  As indicated by the Hein case and Rev. Rul. 66-28, the length of the person's absence from the household does not, by itself, determine whether the absence is temporary.  What is determinative is whether there is any intent to change the principal place of abode. [Emphasis added.]

The Commissioner thus treated as virtually self-evident the application of the principles of Hein and Rev. Rul. 66-28 to an

incarceration scenario (albeit of a child rather than an adult). The Commissioner's application of Rev. Rul. 66-28 to a juvenile incarceration included the principle that it is the existence of any intent to change the principal place of abode that is "determinative" in this particular circumstance.[2] While it is recognized that informal guidance such as a Service Center Advice does not bind the Commissioner as a revenue ruling does under Rauenhorst v. Commissioner, 119 T.C. 157 (2002), such informal guidance is relevant in determining the scope of the principles in a revenue ruling. See id. at 173 n.12.

In these circumstances, absent a reasoned argument from respondent that might distinguish Rev. Rul. 66-28, supra, I do not believe respondent should be permitted to maintain the position he has taken in this case. Under Rauenhorst, I believe petitioner is entitled to rely on Rev. Rul. 66-28, wherein the Commissioner attributed little or no weight to the reasonableness of an assumption of return. The analogies between the facts of this case and those of Rev. Rul. 66-28 are close. Absences due to extended illness or pretrial incarceration share significant similarities. Both absences are essentially involuntary. Moreover, both create particular difficulties in applying the

---

[2] Notably, the Commissioner also treated this "determinative" aspect of Rev. Rul. 66-28, 1966-1 C.B. 31, as applicable in interpreting sec. 1.2-2(c)(1), Income Tax Regs., without regard to the fact that Rev. Rul. 66-28, supra, construed sec. 1.152-1(b), Income Tax Regs.

reasonable assumption of return clause of the regulations.  In the case of extended illness, applying the reasonable assumption of return standard requires the tax administrator to engage in a medical prognosis that is difficult and perhaps unseemly.  In the case of pretrial incarceration, such application requires the tax administrator to speculate about the outcome of the criminal process in a manner that may be inconsistent with the presumption of innocence.

Limiting this case narrowly to its circumstances involving an unconvicted taxpayer who is incarcerated awaiting trial, I am satisfied with the principal opinion's finding that petitioner had not, as of the close of 2002, evidenced any intent to change households.  Accordingly, under the principles of Rev. Rul. 66-28, supra, petitioner is entitled to treat her absence as "temporary * * * due to special circumstances" within the meaning of section 1.2-2(c)(1), Income Tax Regs.

THORNTON, J., agrees with this concurring opinion.

GOEKE, J., concurring: I concur in the result reached by the adopted opinion. I write separately to emphasize the very limited nature of the holding reached today. That is, where a taxpayer is involuntarily removed from her principal place of abode and has not manifested any intent to change that abode, her absence shall be considered temporary for purposes of eligibility for the earned income credit. See Hein v. Commissioner, 28 T.C. 826, 835 (1957).

We do not adopt a general intent test that would be inconsistent with the reasonableness of return test of section 1.2-2(c)(1) of the income tax regulations.[1] In evaluating whether an absence was temporary for purposes of head of household status, this Court in Hein recognized that special circumstances exist whereby a taxpayer (or dependent) never intending to change homes has been involuntarily removed from the home and confined to a separate location. Despite a regulation[2] requiring an analysis of whether it was reasonable to assume the dependent would return home, we held that the possibility of the dependent's absence becoming permanent, by the dependent's

---

[1] The legislative history to the earned income credit (EIC) indicates Congress's intent that we are to apply rules similar to those applied in determining head of household status when determining whether the residency requirements of the EIC have been met. H. Conf. Rept. 101-694, at 1037 (1990), 1991-2 C.B. 560, 564.

[2] The regulation at issue was the predecessor to sec. 1.2-2(c)(1) at sec. 39.12-4(c) of Regulations 118 under the Internal Revenue Code of 1939.

passing, before the dependent is able to return to the home should not prevent eligibility for relief where there is no evidence she intended to change homes.  While not finding the regulation invalid, we stated: "[W]e are unwilling to conclude that it was the intention of the Congress that, where a child or other dependent is sent to a hospital under circumstances that make it likely he will die, this, in itself, is sufficient to change the principal place of abode."  Id.

The dissent's criticisms apply equally to the result reached by this Court in Hein.  Yet in the many years since Hein was decided, the Commissioner first acquiesced in our holding, 1958-2 C.B. 3, 6, and later adopted our holding in Rev. Rul. 66-28, 1966-1 C.B. 31.  See also Serv. Ctr. Advice 200002043 (Jan. 14, 2000) (citing Hein in indicating that "detention in a juvenile facility" pending trial is a temporary absence for purposes of the earned income credit).  In turn, Congress has cited the Commissioner's position in Rev. Rul. 66-28, supra, in several statements of the present law with respect to residency requirements.  See H. Conf. Rept. 108-696, at 56 n.42 (2004); S. Rept. 108-257, at 81 n.120 (2004); H. Conf. Rept. 108-126, at 179 n.327 (2003).  Thus, whatever the merits of the criticism of Hein may have been, the Commissioner and Congress now seemingly agree with its result.

I believe Hein applies to the very limited facts before the Court today.  Where an accused is involuntarily detained in jail

pending her criminal trial, the absence is temporary for purposes of determining eligibility for the earned income credit. I see the petitioner's absence in this case as analogous to a departure caused by serious illness and not a circumstance in which it is appropriate to apply the reasonableness of return test. It is contrary to our criminal justice system to presume petitioner's guilt before her conviction. The possibility that her absence would become permanent by virtue of her ultimate conviction should not lessen the temporary nature of her detention and absence in the months preceding her trial.

COHEN, LARO, and THORNTON, <u>JJ</u>., agree with this concurring opinion.

HALPERN, J., dissenting:

I. Introduction

I do not agree with the analysis set forth in the principal (first) opinion, authored by Judge Kroupa, or the concurring opinions authored by Judges Gale and Goeke. The issue that separates us is the standard for determining whether, on account of petitioner's arrest and detention on June 5, 2002, she was temporarily absent from the household that, up until that date, she had physically occupied with her two children. To determine whether a taxpayer's absence from a household is temporary, section 1.2-2(c)(1), Income Tax Regs., imposes a reasonable-expectation-of-return test. For different reasons, the authors of the principal and concurring opinions abandon that test in favor of a single factor inquiry as to whether there is a lack of evidence of intent to change the place of abode.

Section 1.2-2(c)(1), Income Tax Regs., has the force and effect of law unless it is unreasonable under the statute. See, e.g., Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984); Natl. Muffler Dealers Association, Inc. v. United States, 440 U.S. 472 (1979). Neither the principal opinion nor either of the concurring opinions makes a convincing argument that the regulation is unreasonable under the statute. Moreover, we do not have the benefit of the parties' thoughts on that or much of anything. We granted the parties' motion for

leave to submit the case without a trial on the basis of the pleadings, pretrial memoranda, and the stipulation of facts. We have no briefs. The pretrial memoranda are uninformative of the issues dividing the Court. The only relevant portion of respondent's memorandum is as follows:

> Respondent's position is that sharing of the same principal place of abode requires that a "qualifying child" live with the taxpayer for more than one-half of the taxable year. The test is a "simple residence test" that based eligibility on whether the taxpayer lived with her child for more than six months of the taxable year. Sherbo v. Commissioner, 255 F.3d 650, 654-655 (8th Cir. 2001).

Petitioner, who is pro se, fails to address the issues at all.

Before proceeding any further, I would ask the parties for briefs. The Court not having done so, I set forth my disagreements with the principal and concurring opinions.

II. Discussion

A. The Same Principal Place of Abode

The principal question before us is whether petitioner is eligible for the earned income credit allowed by section 32. The answer depends on whether petitioner and her two children had the same "principal place of abode" for at least 6 months of 2002. Sec. 32(c)(3)(A)(ii). Petitioner was arrested on June 5, 2002, and held in the Lane County, Oregon, jail until April 26, 2003, when she was convicted of murder and remanded to State custody to serve a life sentence.

To determine whether petitioner and her children had the same principal place of abode for at least 6 months during 2002, we look to section 1.2-2(c)(1), Income Tax Regs. Pursuant to that section, individuals have the same abode during periods that they occupy the same household. As pertinent to our present inquiry, we have interpreted the term "occupy" to mean "physically occupy". See Prendergast v. Commissioner, 57 T.C. 475, 479 (1972), affd. 483 F.2d 970 (9th Cir. 1973); Biolchin v. Commissioner, T.C. Memo. 1969-197, affd. 433 F.2d 301 (7th Cir. 1970). Petitioner did not physically occupy the same household as her children after June 5, 2002. She and her children, therefore, did not physically occupy the same household for at least 6 months during 2002. Nevertheless, section 1.2-2(c)(1), Income Tax Regs., provides that, in determining whether an individual occupies a household for an entire year, her absence during some or all of that year will be excused if, among other things, it is both temporary and due to special circumstances. I agree with the principal opinion that we should apply a similar exception in determining whether petitioner and her children co-occupied the same household for more than 6 months during 2002 for purposes of the earned income credit.

B. Temporary Absence Due to Special Circumstances

Section 1.2-2(c), Income Tax Regs., provides that a nonpermanent failure to occupy the common abode by reason of,

among other things, illness, education, business, vacation, or military service shall be considered temporary absences due to special circumstances.  I agree with the principal opinion that the list of special circumstances in section 1.2-2(c)(1), Income Tax Regs., is not exclusive.  See Prendergast v. Commissioner, 57 T.C. at 480.  I have no quarrel with the conclusions in the principal opinion that (1) "Jail confinement after an arrest is a type of absence that is of a necessitous variety", see principal op. p. 8, and (2) "jail confinement is similar to those examples listed in * * * [section 1.2-2(c)(1), Income Tax Regs.]", see principal op. pp. 8-9.

C.  The Reasonable-Expectation-of-Return Test

At the end of 2002, there was insufficient information to say with certainty whether petitioner's absence from the household on account of her arrest and incarceration was temporary (and therefore an excusable special circumstance) or permanent (and therefore inexcusable, whether a special circumstance or not).  The reasonable-expectation-of-return test solves that dilemma.  In pertinent part, section 1.2-2(c)(1), Income Tax Regs., provides:  "Such absence [i.e., an absence due to a special circumstance] will not prevent the taxpayer from being considered as maintaining a household if * * * it is reasonable to assume that the taxpayer or such other person will return to the household".

Thus, where, at the time a determination of abode must be made, it cannot be determined whether a person's absence is permanent, the absence will be ignored if it is reasonable to assume that the person will return.[1]  For instance, assume that petitioner had been arrested on strong evidence of child abuse. At the time of her arrest, or at any time thereafter while the household still existed and she remained in jail, no one could say with certainty that her absence was permanent.  Given the strong evidence of child abuse, however, it would be reasonable to assume that her absence would be permanent, no matter how the charges against her were resolved.  In contrast, it might be unreasonable to make the same assumption if the only charge against her were that she had stolen money that she had expended on support for her children.[2]

D.  Hein v. Commissioner

In Hein v. Commissioner, 28 T.C. 826 (1957), a Court-reviewed opinion, we held that a lack of a showing of the intent permanently to abide elsewhere is dispositive of the issue

---

[1]  And, in circumstances not here pertinent, the taxpayer continues to maintain the household or a substantially equivalent household in anticipation of her or her co-occupant's return. Sec. 1.2-2(c)(1), Income Tax Regs.

[2]  If it is reasonable to assume that a taxpayer absent from her household on account of a special condition will return to the household, then her death prior to her return (making her absence permanent) would not seem to be a disabling factor because of the language of sec. 1.2-2(c)(1), Income Tax Regs., dealing with death during the taxable year.

whether an absence is to be considered temporary or permanent. We were interpreting language virtually identical to that in section 1.2-2(c)(1), Income Tax Regs. The taxpayer in question had claimed head of household status predicated on his maintaining a common household with his invalid sister. The sister was his dependent, and, although confinement was not absolutely necessary (she could have been maintained elsewhere with 24-hour nursing care), she had been confined for many years to a sanatorium on account of mental illness and had little, if any, chance of recovering. If she did recover, however, the taxpayer intended that she would again live in his home. The Commissioner's principal argument was that, because of the seriousness of the sister's illness, it was unreasonable to assume that she would return to the taxpayer's household. We answered: "[T]he true test is not whether the return may be prevented by an act of God, but rather whether there are indications that a new permanent habitation has been chosen." Hein v. Commissioner, supra at 835.

E. The Commissioner's Pronouncements

In 1958, the Commissioner announced his acquiescence in Hein. 1958-2 C.B. 3, 6. The boilerplate accompanying the announcement states, among other things, that the Commissioner's acquiescence in an adverse decision can be relied on only with respect to the application of the law to the facts in the

particular case, and that the acquiescence means acceptance of the conclusion reached and does not necessarily mean acceptance and approval of any or all of the reasons assigned by the Court for its conclusions. Id. at 3.

In 1966, the Commissioner issued Rev. Rul. 66-28, 1966-1 C.B. 31, which concerns whether an individual qualified as the taxpayer's dependent under then section 152(a)(9). The ruling addresses the question of whether the individual, who was indefinitely confined to a nursing home because of an illness requiring constant medical care, was to be considered temporarily absent from her principal place of abode during such confinement. The pertinent regulation, then and now, contains a provision dealing with temporary absence due to special circumstances similar to the temporary absence provision in section 1.2-2(c)(1), Income Tax Regs. See section 1.152-1(b), Income Tax Regs. The provisions are not identical, however, in that section 1.152-1(b), Income Tax Regs., unlike section 1.2-2(c)(1), Income Tax Regs., does not include the reasonable-expectation-of-return test.

Relying on the similarity of the two provisions and this Court's interpretation of the predecessor of section 1.2-2(c)(1), Income Tax Regs., in Hein v. Commissioner, supra, the Commissioner concluded that indefinite confinement to a nursing home because of illness will likewise be considered a temporary

absence due to special circumstances for purposes of then section 152(a)(9) even though such absence is for an extended period of time. The Commissioner added: "There must, of course, be an absence of an intent on the part of the taxpayer and the dependent to change the dependent's principal place of abode. The possibility or probability that death might intervene before the dependent returns to the taxpayer's household is not sufficient to make such absence permanent."

Finally, in Service Center Advice 200002043 (Jan. 14, 2000), the Commissioner states the following with respect to section 1.2-2(c)(1), Income Tax Regs.:

> Detention in a juvenile facility pending trial can be a temporary absence notwithstanding the possibility that the child may be detained after the trial for an extended period of time in a juvenile facility. <u>As indicated by the Hein case and Rev. Rul. 66-28, the length of the person's absence from the household does not, by itself, determine whether the absence is temporary. What is determinative is whether there is any intent to change the principal place of abode</u>. [Emphasis added.]

For whatever it adds, the advisory does make the assumption that the child is not being tried as an adult.

F. <u>Validity of the Regulations</u>

The three pronouncements could be read to indicate an erosion of the Commissioner's reliance on the reasonable-expectation-of-return test. Nevertheless, none of them is explicit in abandoning that test, and I am not prepared to conclude that the Commissioner has, sub silentio, amended the

Secretary's regulations.  Moreover, the principal opinion appears to uphold the regulations.  It cites section 1.2-2(c)(1), Income Tax Regs., and claims:  "We * * * consider whether it is reasonable to assume that petitioner, who was temporarily absent from her home in 2002 due to her arrest and jail confinement but before her conviction, would return to her home."  Principal op. p. 9.  It characterizes Hein v. Commissioner, 28 T.C. 826 (1957), as having "previously established factors to rely on in making this determination."  Id.  It claims to "apply the factors we set forth in Hein to the circumstances here and concludes that it was reasonable to assume petitioner would return to her home with her children."  Id. at 10.  It declines, however, "to assess objectively the strength of the criminal charges against petitioner or require petitioner to show the weakness of the charges against her to determine whether it was reasonable to assume she would return to her home."  Id.  Besides the pendency of the criminal case against petitioner at the end of 2002, and petitioner's reference to her mother-in-law's home as her "home", the only factor the principal opinion mentions is:  "As in Hein, there are no indications in the record that petitioner intended to choose a new home."  Id.  It concludes:  "[A]lthough petitioner has been arrested and was confined in jail through the end of 2002, it was reasonable to assume she would return to her

home <u>because she had not chosen a new home</u>."  <u>Id.</u> at 11 (emphasis added).

The reasonable-expectation-of-return test presents a question of fact.  Petitioner bears the burden of proving by a preponderance of the evidence that it is reasonable to assume that she will return to the household.  See Rule 142(a).  The evidence in this case shows that, on June 5, 2002, petitioner was removed from her household by reason of her arrest and did not return.  But for the finding in the principal opinion with respect to her intent, petitioner has failed to produce any evidence that it is reasonable to assume that she will return.[3] The conclusion in the principal opinion that, as a matter of law, petitioner's showing of intent is sufficient both follows <u>Hein v. Commissioner</u>, <u>supra</u>, and sidesteps the factual inquiry required by the regulations.  My difficulty with the principal opinion is that it does not reconcile <u>Hein</u> with the reasonable-expectation-of-return test.  If the premise of the principal opinion is that the reasonable-expectation-of-return test is invalid, the principal opinion should say so and explain why.  If the principal opinion does not consider the test to be invalid, then

---

[3] For the sake of argument, I am willing to concede that petitioner has proven that she intended to return home, although in this fully stipulated case that fact is not stipulated and the author of the principal opinion makes the finding that petitioner had not chosen a new home based in part on the <u>absence</u> of "indications in the record that petitioner intended to choose a new home."  Principal op. p. 10.

it should explain how it is consistent with <u>Hein</u>, which I read as disregarding a multiple factor analysis in favor of establishing the lack of evidence of intent to change the place of abode as the sole deciding factor.

The Commissioner's acquiescence in <u>Hein</u>, to say the least, muddies the waters.

 G.  <u>Rauenhorst v. Commissioner</u>

In <u>Rauenhorst v. Commissioner</u>, 119 T.C. 157 (2002), we refused "to allow * * * [IRS] counsel to argue the legal principles of * * * opinions against the principles and public guidance articulated in the Commissioner's currently outstanding revenue rulings." <u>Id.</u> at 170-171. The concurring opinions would, explicitly, in the case of Judge Gale, and, implicitly, in the case of Judge Goeke, invoke <u>Rauenhorst</u> to foreclose respondent from disavowing his acquiescence in <u>Hein v. Commissioner</u>, <u>supra</u>, and his ruling, Rev. Rul. 66-28, <u>supra</u>.

First, I must point out the respondent has disavowed neither. This is a fully stipulated case, the parties did not file briefs, there was no argument, and respondent's position in his trial memorandum disavowed nothing.

Second, because of the boilerplate accompanying his acquiescence, respondent's acquiescence in <u>Hein</u> is ambiguous as to what, exactly, he is acquiescing, other than the conclusion reached: The Commissioner's acquiescence "does not necessarily

mean acceptance and approval of any or all of the reasons assigned by the Court for its conclusions." 1958-2 C.B. at 3.

Third, Rev. Rul. 66-28, supra, is distinguishable in that it is interpreting a regulation, sec. 1.152-1(b), Income Tax Regs., that does not contain the reasonable-expectation-of-return test, contained in section 1.2-2(c)(1), Income Tax Regs. See supra note 3. Perhaps Rev. Rul. 66-28, supra, is best read as acknowledging that nursing home stays are "temporary absences due to special circumstances" if done with the intent or hope of one day returning, rather than abrogating a different regulation's requirement that such a hope to return be reasonable. The ruling is also distinguishable in that a nursing home stay, although it may be necessitous, is not compelling in the same way that a stay in jail is compelling.

Fourth, even if not distinguishable, Revenue Rulings do not have the force of regulations. E.g., Estate of Kincaid v. Commissioner, 85 T.C. 25 (1985). Indeed, the Supreme Court has held: "[T]he Commissioner's acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting a tax otherwise lawfully due." Dixon v. United States, 381 U.S. 68, 73 (1965).

Finally, and most importantly, are we really prepared to interpret a ruling that, it seems by stealth, overrules a

regulation without asking for the Commissioner's position and without deciding for ourselves whether the regulation is valid?

H.  Policy Concerns

If we are to be influenced by sympathy for petitioner in light of what we discern to be the policy behind section 32, we should consider that, to the extent we have crafted a rule of law, it may have unintended consequences for other taxpayers deserving of our sympathy.  It is stipulated:  "At the time of petitioner's arrest, the father of petitioner's two children, Charles Rowe, moved into the Rowe family home with petitioner's two children."  I assume that, under the tie-breaking rule of section 32(c)(1)(C)(ii)(I), awarding the credit to the parent residing with the children for the longest period during the year, petitioner, having been deemed by the principal opinion to have resided with the children for the whole of 2002 (as opposed to the father's approximately 7 months), gets the credit.[4]  To take another case, assume that a single parent living with her mother and young children is, as was the dependent in Hein v. Commissioner, 28 T.C. 826 (1957), institutionalized for illness with no actual chance of return.  Would the children remain the qualifying children of the mother (to the exclusion of the grandmother) under the tie-breaking rule of what is now section

---

[4]  The referenced tie-breaking rule is now at sec. 152(c)(4)(B)(i).

152(c)(4)(A)(i), entitling the mother (and not the grandmother) to head of household status, the earned income credit, and dependency exemptions on account of the children?  See secs. 2(b)(1)(A)(i), 32(c)(1)(A)(i), 152(a)(1), respectively.  What policy would drive that result?

III.  Conclusion

This case presents too many questions for disposition without briefing by the parties.  Therefore, I respectfully dissent.

COLVIN, MARVEL, HAINES, WHERRY, and HOLMES, JJ., agree with this dissenting opinion.