T.C. Summary Opinion 2016-90

UNITED STATES TAX COURT

DANIEL BINNS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1781-15S.                    Filed December 22, 2016.

Daniel Binns, pro se.

<u>Evan K. Like</u>, for respondent.

SUMMARY OPINION

WHERRY, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined that petitioner has a deficiency of $4,271 in Federal income tax for taxable year 2013. The issues for decision are whether petitioner is entitled to: (1) dependency exemption deductions for Lisa Hinkle and a child with the initials C.B.;[2] (2) head of household filing status; (3) an earned income credit; and (4) an additional child tax credit for the taxable year 2013.

Background

Petitioner, Daniel Binns, electronically filed a timely income tax return, Form 1040, U.S. Individual Income Tax Return, for the taxable year 2013. Petitioner filed that return as head of household and claimed (1) a dependency exemption deduction for Lisa Hinkle and a child with initials C.B., (2) an earned income tax credit, and (3) an additional child tax credit. Petitioner was a resident of Ohio during all relevant times.

Petitioner and Ms. Hinkle were never married, but they shared a residence for some of the taxable year 2013. Petitioner was unable to reside with Ms. Hinkle during all of 2013 because he was incarcerated at an Ohio correctional facility

---

[2]It is the policy of this Court not to identify minors. We refer to minor children by their initials. See Rule 27(a)(3).

from January 16 to November 6, 2013.[3] In March 2012 petitioner and Ms. Hinkle rented an apartment on Ironwood Court in Columbus, Ohio, which served as their home. Except for petitioner's confinement period when he was absent from the home, they remained there throughout 2013 until they moved to a new apartment on January 14, 2014.

Prior to his incarceration petitioner took great care to provide for Ms. Hinkle and their child, C.B. (born in 2010). Petitioner worked for an event rental business starting in March 2011 until he was incarcerated on January 16, 2013. He paid January rent for their apartment and then pre-paid the $555 monthly rent for the next six months (through July 2013) as he expected to be released from incarceration at the end of July. After he filed his taxable year 2012 Federal income tax return, he had his refund of $4,511 issued to a checking account controlled by Hardin Hinkle, Ms. Hinkle's uncle. The tax refund was then dispersed to Ms. Hinkle by her uncle for her to use for bills, food, clothing, etc. for herself and C.B.[4] Petitioner also set up a budget plan with Columbia Gas of Ohio,

---

[3]A judgment entry by the Court of Common Pleas Franklin County, Ohio, Criminal Division, against petitioner Daniel Binns was filed on January 17, 2013, with a sentence of four years' incarceration.

[4]The record is unclear as to whether Ms. Hinkle received the money as a lump sum or her uncle, Mr. Hinkle, distributed it as she required funds.

under which he paid a set amount of $40 per month for gas regardless of use. At the end of the year Columbia Gas of Ohio billed petitioner an accrued balance to reflect actual use or issued a credit for any overpayment. The electric bill for the apartment was approximately $1,470 for the entire year. Individuals must apply each year through the State of Ohio in order to be eligible for the budget plan. Ms. Hinkle used the funds petitioner provided to pay $480 to the gas company and $1,470 to the electric company during the taxable year 2013.

During this period Ms. Hinkle did not work and stayed home with C.B. Thus, neither petitioner nor Ms. Hinkle incurred any school or significant child care expenses in 2013. When petitioner realized he would not be released in July as he had previously thought, he contacted his landlord, Ms. Chan, with whom he had rapport. Ms. Chan agreed to allow Ms. Hinkle (and C.B.) to remain in the apartment until petitioner was released from prison when he would pay off or work off any unpaid balance. Upon his release, petitioner worked as a handyman in some of Ms. Chan's other apartment units. He painted, patched, and did other punch list work for these units. She credited an agreed amount for his work against the rent owed. From his release on November 6, 2013, to the end of 2013, he earned $11,000 from Ms. Chan which he reported on Schedule C, Profit or Loss from Business, of his 2013 Form 1040.

Petitioner requested and submitted into evidence his 2011 and 2012

transcripts from the IRS, which showed that he claimed the earned income credit

for C.B.  On his 2011 return, petitioner claimed C.B. as a dependent and filed as

single.  Petitioner resided with C.B. for the entirety of 2011.  On his 2012 return,

petitioner claimed C.B. and Ms. Hinkle as dependents and filed as head of

household.  The 2012 transcript also shows a refund of $4,511 issued to petitioner.

The Court finds that the transcripts reflect a course of conduct showing that

petitioner provided for C.B.'s support during these years.

Ms. Hinkle also received benefits from the Supplemental Nutrition

Assistance Program (SNAP), commonly referred to as food stamps, for most or all

of 2013.  We take judicial notice[5] of the U.S. Department of Agriculture, Food and

---

[5]The Court will take judicial notice of the 2013 maximum benefit amounts for the Supplemental Nutrition Assistance Program.  See Fed. R. Evid. 201(c); see also Denius v. Dunlap, 330 F. 3d 919, 926-927 (7th Cir. 2003); United States v. Harris, 331 F. 2d 600, 601 (6th Cir. 1964).  In general, the Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

As we do here, a court may take judicial notice of public records not subject to reasonable dispute.  See, e.g., Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1057-1058 (C.D. Cal. 2008) (taking judicial notice of two deeds of trust and a full reconveyance recorded in the Official Records of the Los Angeles County, California, Recorder).  Ample precedent exists for our reliance on electronic versions of public records.  See, e.g., Marshek v. Eichenlaub, 266 F. App'x 392, 392-393 (6th Cir. 2008) (holding that the court could take judicial notice of information on the Inmate Locator, maintained by the Federal Bureau of

(continued...)

Nutrition Service Web site, which indicates that for a household of two people, the maximum monthly benefits were $367 per month for most of 2013. Food and Nutrition Service, FY2013 Allotments and Deduction Information, (April 2, 2014), http://www.fns.usda.gov/snap/fy-2013-allotments-and-deduction-information.

Petitioner credibly testified that for 2013 he provided at least $18,000 of support, and Ms. Hinkle relied on these funds, along with SNAP assistance, for her and C.B.'s maintenance and well-being. Petitioner's testimony indicated that Ms. Hinkle's parents likely provided some additional financial assistance to C.B. and Ms. Hinkle for 2013 and that Ms. Hinkle's parents may have claimed C.B. and Ms. Hinkle as dependents on their 2013 tax return. Petitioner did not provide any evidence with respect to the amount of support Ms. Hinkle's parents provided or by extension the total amount of support received by Ms. Hinkle during the taxable year 2013.

---

[5](...continued) Prisons, and accessed through the agency's Web site); Denius, 330 F.3d at 926-927 (holding that District Court erred when it refused to take judicial notice of information on an official Web site of a Federal agency that maintained medical records on retired military personnel, the fact of which was appropriate for judicial notice because it is not subject to reasonable dispute).

C.B. received medical care, during three healthcare appointments in December 2013, but there is no indication that its cost was significant. The record does not reveal how the exact costs of this care or these visits were paid for. Nevertheless, petitioner paid the rent and utilities related to the apartment where he, Ms. Hinkle, and C.B. resided for the 2013 year, and these amounts represented more than one-half of the expenses incurred to maintain the household for the year.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). Although section 7491 may shift the burden of proof to the Commissioner in specified circumstances, petitioner here has not established that he meets the requisites under section 7491(a)(1) and (2) for such a shift.

I.    Dependency Exemptions

Section 151 allows deductions for personal exemptions, including exemptions for dependents of the taxpayers. See sec. 151(c). Section 152(a) defines the term "dependent" as a qualifying child or qualifying relative. Section 152(c)(1) defines a qualifying child as an individual who: (1) bears a relationship to the taxpayer described in section 152(c)(2); (2) has the same principal place of abode as the taxpayer for more than one-half of such taxable year (residency test); (3) meets certain age requirements; and (4) has not provided over one-half of such individual's own support for the calendar year in which the taxable year of the taxpayer begins. For the taxable year 2013, C.B. meets the relationship, age, and support requirements under section 152(c)(1)(A), (C), and (D) respectively, such that C.B. could be the qualifying child of either petitioner or Ms. Hinkle.

Generally, the residency test is satisfied if the individual has the same principal place of abode as the taxpayer for more than one-half of the taxable year. Sec. 152(c)(1)(B). C.B. satisfies the residency test with respect to Ms. Hinkle because they were physically present in the same home during all of the taxable year 2013.

Petitioner was incarcerated from January 16 through November 6, and as a result he did not physically reside in the same home with C.B. for more than six

months during 2013. However, temporary absences due to special circumstances, including absences due to illness, education, business, vacation, and military service, are not treated as absences for purposes of determining whether the residency test is satisfied. Sec. 1.152-1(b), Income Tax Regs.; see also Hein v. Commissioner, 28 T.C. 826 (1957).

Given the facts of this case and petitioner's parole during the year, we find that petitioner's incarceration does not prevent him from satisfying the residency requirement of section 152(c)(1)(B). See Rowe v. Commissioner, 128 T.C. 13 (2007) (interpreting similar language and finding that preconviction incarceration was a temporary absence for purposes of calculating earned income credit). Although petitioner could not be sure when he would be able to leave State custody, he believed that it would be in only six months; and he made plans to provide for his household in his absence and returned as soon as he was permitted to. See Hein v. Commissioner, 28 T.C. at 834-835 (finding indefinite absence to be temporary for purposes of establishing dependency exemption where absent member of household would return as soon as she was able); Rev. Rul. 66-28, 1966-1 C.B. 31. For purposes of section 152(c)(1)(B), we will treat petitioner, Ms. Hinkle, and C.B. as having the same principal place of abode for the entire taxable year 2013.

Because C.B. satisfies all four tests under section 152(c)(1) for both petitioner and Ms. Hinkle, we look to the tiebreaker rules under section 152(c)(4) to determine which of them may claim C.B. as a qualifying child for taxable year 2013. Where both parents, who do not file a joint return, each reside with the child for the same length of time during the year, section 152(c)(4)(ii) provides that the child is treated as the qualifying child of the parent having the higher adjusted gross income (AGI). The record establishes that Ms. Hinkle stayed at home to provide care for C.B. during taxable year 2013 and did not have any substantial adjusted gross income, while petitioner had an AGI of $10,233 (business income of $11,000 – self-employment tax of $777 = $10,233). Accordingly, C.B. is petitioner's qualifying child for the taxable year 2013, and petitioner is entitled to the corresponding dependency exemption.

Petitioner is not, however, entitled to claim Ms. Hinkle as a qualifying relative for the taxable year 2013. Section 152(d)(1) defines a qualifying relative as an individual: (1) who bears a relationship to the taxpayer described in section 152(d)(2); (2) whose gross income for the calendar year is less than the exemption amount (as defined in section 151(d)); (3) with respect to whom the taxpayer provides over one-half of the individual's support for the calendar year; and (4)

who is not a qualifying child of the taxpayer, or of any other taxpayer, for the taxable year.

Petitioner and Ms. Hinkle were not married during 2013. However, section 152(d)(2)(H) provides that a qualified individual includes an individual, other than the taxpayer's spouse, who has the same principal place of abode as the taxpayer and is a member of the taxpayer's household. In order to meet the definition of qualifying relative under section 152(d)(2)(H), the regulations clarify that the individual must live with the taxpayer for the entire taxable year, excluding temporary absences. Sec. 1.152-1(b), Income Tax Regs. As discussed supra pp. 8-9, we have found that petitioner's incarceration qualifies as a temporary absence under the regulations. Respondent does not dispute that Ms. Hinkle had no significant gross income and that she was not the qualifying child of any other taxpayer.

We turn next to whether petitioner has established that he provided more than one-half of Ms. Hinkle's support during the taxable year 2013. The regulations provide that "[t]he term 'support' includes food, shelter, clothing, medical and dental care, education, and the like." Sec. 1.152-1(a)(2)(i), Income Tax Regs. In determining whether an individual received more than one-half of his or her support from a taxpayer, there shall be taken into account the amount of

support received from the taxpayer as compared to the entire amount of support which the individual received from all sources. Id.

Petitioner failed to carry his burden of showing by competent evidence that he provided at least half of all support for Ms. Hinkle during 2013. In order for petitioner to establish that he provided more than one-half of Ms. Hinkle's total support during 2013, petitioner must establish the total amount of Ms. Hinkle's support from all sources for the year. See Archer v. Commissioner, 73 T.C. 963, 967 (1980); Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971); sec. 1.152-1(a)(2)(i), Income Tax Regs. If the amount of total support for the year cannot be reasonably inferred from competent evidence, then it is not possible to conclude that the taxpayer furnished more than one-half of the total amount of support. Blanco v. Commissioner, 56 T.C. at 514-515; Stafford v. Commissioner, 46 T.C. 515, 518 (1966).

Petitioner demonstrated by credible evidence that he paid the bulk of the household expenses for the apartment in which Ms. Hinkle and C.B. lived, including paying the rent for their apartment and providing $4,511 from his tax refund, which was used for expenses such as utilities. Ms. Hinkle received SNAP benefits which provided for her food. We think it is reasonable to surmise that under the circumstances Ms. Hinkle's parents were trying to help her during 2013,

and the record shows that Ms. Hinkle's parents provided her with additional support. Ms. Hinkle did not testify at trial, and the record does not contain any evidence of the amount of her other personal expenses, such as clothing, medical care, or transportation. Thus petitioner has not provided the Court with sufficient evidence of the total amount of support Ms. Hinkle received during the taxable year 2013. Accordingly we cannot find that he provided at least half of that amount, and he is not entitled to a dependency exemption for Ms. Hinkle. See Blanco v. Commissioner, 56 T.C. at 514-515; Stafford v. Commissioner, 46 T.C. at 518.

## II.     Head of Household

Section 2(b) provides that a head of household includes an unmarried individual if the individual maintains a home which is the principal place of abode, for at least one-half of the year, for either a qualifying child (defined under section 152(c)) or any other person who is the individual's dependent under section 151. Petitioner has established that C.B. was his qualifying child for taxable year 2013.

An individual will be considered to maintain a household only if the individual pays more than one-half of the expenses associated with the household. The expenses of maintaining a household include property taxes, mortgage

interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises. Sec. 1.2-2(d), Income Tax Regs. Such expenses do not include the cost of clothing, education, medical treatment, vacations, life insurance, and transportation. Id.

As discussed supra p. 13, petitioner established that he paid rent and utilities for an apartment which was the principal abode for himself, Ms. Hinkle, and C.B. during the taxable year 2013. The household also received Government assistance for food expenses; however, the amount of this assistance was less than the amount petitioner provided for rent. Petitioner is entitled to head of household filing status for the taxable year 2013.

III.  Child Tax Credit

Section 24(a) allows a tax credit of a specified amount with respect to each qualifying child of a taxpayer. As pertinent here, section 24(c)(1) provides that, for purposes of section 24, "qualifying child" means an individual under age 17 who is a qualifying child of the taxpayer as defined in section 152(c). As discussed above, petitioner has shown that C.B. is his qualifying child under section 152(c). Therefore, petitioner is entitled to the child tax credit for the 2013 taxable year.

IV.    Earned Income Credit

Section 32(a)(1) permits an eligible individual an earned income credit against the individual's tax liability.  On his 2013 return, petitioner claimed an earned income credit for an eligible individual with one qualifying child.  See sec. 32(c)(1)(A)(i).  Section 32(c) provides that term "eligible individual" includes an individual who has a qualifying child during the taxable year.  Sec. 32(c)(1)(A)(ii).

A qualifying child for purposes of section 32 is defined by reference to section 152(c), with certain modifications not relevant here.  As discussed above, petitioner has established that C.B. was his qualifying child under section 152(c) during 2013.  Accordingly, petitioner is entitled to the earned income credit computed for an eligible individual with one qualifying child.

V.    Conclusion

Petitioner has established that C.B. was his qualifying child for the taxable year 2013.  Accordingly, he is entitled to a dependency exemption deduction for C.B., head of household filing status, a child tax credit, and an earned income tax credit for a qualified individual with one qualifying child.  Petitioner has not shown that Ms. Hinkle was his qualifying relative, and he is not entitled to a dependency exemption deduction for her for the taxable year 2013.

To reflect the foregoing,

Decision will be entered under

Rule 155.